CASE 41—INDICTMENT—NOVEMBER 29.

# Geo. F. Mitchell v. The Commonwealth.

### APPEAL FROM OHIO CIRCUIT COURT.

1. It never was at common law a punishable offense to produce, with the consent of the mother, an abortion prior to the time the mother became quick with child.

2. The indictment does not allege that the mother was quick with child, nor does it aver that the potion was administered with the intention to destroy the life of the child, nor that such was the result produced by the potion. There being no statute, it is *held* that the indictment is not good.

3. The instructions do not form a part of the bill of exceptions, and cannot be considered.

McHENRY & HILL FOR APPELLANT.

1. The instructions are erroneous.

2. The indictment is insufficient. It does not aver that the mother was quick with child. (Black. Com., 129; Lord Hale's P. C., 413; Law Dic., 415, 416; Stat., 9 Geo., 4 C., 31, sec. 13; 7 William, 4; 1 Vic. C. 85, s. 6. ; Roscoe's Crim. Ev., 265.)

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLEE.

1. There is no exception to any instruction given.

2. The destruction of an infant is, at common law, a high misdemeanor. (Wharton's Crim. Law, 1220.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

This appeal is from a conviction and fine of three hundred and seventy-five dollars, on indictment charging appellant with procuring an abortion.

Section 341 of the Criminal Code is as follows: "A judgment shall not be reversed for an error of the court in instructing or refusing to instruct the jury, unless the bill of exceptions contain all the instructions given by the court to the jury, and unless it shall thereupon appear that the law applicable to the case was not correctly and fairly given to the jury."

There is no bill of exceptions showing any instructions given or refused. Following the bill of evidence and exceptions, signed by the judge of the court below, are the following statements made by the clerk, to-wit:

"Instructions given are as follows," and after this is what purports to be the instructions referred to. After this is the statement: "Instructions refused by the court are as follows," followed by what purports to be the instructions refused.

If these instructions were presented, as here presented, in a bill of exceptions properly signed, so as to identify them, we might be authorized, under the authority of Mickey v. Commonwealth (9 Bush), Smith v. Commonwealth (1 Duvall), Clem v. Commonwealth and Jones v. Commonwealth (3 Met.), to consider them; but they do not appear to be a part of the bill of exceptions, and are not therefore sufficiently identified. (Section 282, Criminal Code; title 9, chapter 2, article 4, Civil Code.)

The more important inquiry is whether the indictment sets forth an offense punishable by the law, and as the statutes of this state are silent in reference to this matter, reference must be had to the common law.

The indictment is as follows:

"The grand jury of Ohio county, in the name and by the authority of the Commonwealth of Kentucky, accuse Geo. F. Mitchell of the crime of wilfully and unlawfully producing a miscarriage and abortion on another, committed in manner and form, to-wit: the said Geo. F. Mitchell, in the county of Ohio, on the —— day of August, 1878, and before the finding of this indictment, did wilfully, knowingly, unlawfully, and feloniously give and administer to Miss M. B. Burgess, a woman who was then and there pregnant and in the family way, and who had been so about three months,

a certain deleterious drug, potion, and medicine, which said Burgess took inwardly—the said drug, potion, and medicine is unknown to the said grand jury—with intent to, and did thereby, by giving and administering to her as aforesaid, cause her, the said Burgess, to abort and miscarry, and bring forth many months before her time, contrary to the form of the statutes," &c.

In Commonwealth v. Bangs (9 Mass.), decided in 1812, it was held that the averment that the woman was quick with child at the time of the abortion was essential to the validity of the indictment. This case was followed and approved in Commonwealth v. Parker (9 Metcalfe), decided in 1845, in which it was held that to produce an abortion on a woman, before she was quick with child, and with her consent, was not a punishable offense at the common law. Subsequently the legislature of Massachusetts passed an act making the destruction of the fœtus, at any time, punishable. (St. 1845, chap. 27.) In Smith v. State (33 Maine), decided in 1851, the same view as to what the common law was is expressed.

In The State v. Cooper (2 Zabriskie, 53), to produce an abortion previous to the quickening of the child, was held not to be punishable at common law.

Upon the other hand, as to what the common law is, the Supreme Court of Pennsylvania expresses the contrary view —holding that the offense is punishable at common law; whether committed before or after the woman has become quick. (Mills v. Commonwealth, 13 Pa. State, 633.) It is there said: "The next error assigned is, that it ought to have been charged in the count that the woman had become quick. But although it has been so held in Massachusetts and some other states, it is not, I apprehend, the law in

Pennsylvania, and never ought to have been the law any-
where.    It is not the murder of a living child which consti-
tutes the offense, but the destruction of gestation by wicked
means and against nature.    The moment the womb is in-
stinct with embryo life, and gestation has begun, the crime
may be perpetrated.''    The only authority cited in this
opinion is an opinion of the same court (Commonwealth v.
Demain), delivered in 1846, and section 308 of Wharton's
Criminal Law.

Mr. Wharton on Criminal Law, sections 1220 to 1228,
inclusive, expresses the opinion that the rulings by the Penn-
sylvania Supreme Court are a correct exposition of the com-
mon law upon this question. . The only direct authority
cited by him in support of his view is the case of Common-
wealth v. Demain, Supreme Court of Pennsylvania, decided
1846, and reported in 6 Pennsylvania Law Journal; R. v.
Wycherly; 8 C. & P., 265; and the case of Mills v. Com-
monwealth, 13 Pa., above referred to.    But it will be seen
from section 1221 that the exact point under discussion was
not decided in the Demain case.    Although the point was
elaborately argued by counsel, it was not decided by the
court.    They are reported as saying that the indictment suf-
ficiently averred that the party injured was pregnant and
*quick* with child, which was killed.    The only bearing that
the case of Regina v. Wycherly, 8 C. & P., has upon the case
is as to the meaning at common law of the expressions
''*quick with child*'' and ''*with quick child.*''    Gurney, B.,
after taking medical counsel, said:  ''Quick with child is
having conceived; with *quick* child is when the child is
quickened.''    This distinction is denied, however, in State
v. Cooper, 2 Zabriskie.    It is there said: ''There is no foun-
dation in law for this distinction.    The ancient authorities

show clearly that the terms are synonymous, both importing that the child had quickened in the womb, and that the period had arrived when the life of the infant, in contemplation of law, had commenced." In support of this statement, the opinion cites Sarah Boynton's case, 14 State Trials, 634; 1 Hale's P. C., 368, and 4 B. C., 395.

"Life," says Blackstone, "begins, in contemplation of law, as soon as an infant is able to stir in the mother's womb." (1 Bl. Com., 129.)

In the State v. Cooper (2 Zabriskie) it is said: "*In contemplation of law*, life commences at the moment of quickening, at that moment when the embryo gives the first physical proof of life, no matter when it first received it. . . . So far as my researches have gone, I have found no precedent, no authority, nor even dictum (prior to Lord Ellenborough's act, 43 George III, C., 58), which recognizes the mere procuring of an abortion as a crime known to the law."

The view that there was then no law to punish for abortions produced prior to the time the mother was quick with child is strengthened by the fact that this statute, which was to go into effect July 1st, 1803, after specifying the punishment to be inflicted for producing the "miscarriage of any woman then being quick with child," the second section provided that any one producing a miscarriage, "the woman not being, or not being proved to be quick with child," should be fined and imprisoned, set in the pillory, &c. The language used in the beginning of that section is significant: "Whereas, it. may sometimes happen that poison or some other noxious and destructive substance or thing, may be given or other means used, with intent to procure miscarriage or abortion when the woman may not be quick with child at the time," &c.

In Rex v. Phillip (3 Campb., 73), in reference to an indictment found under the statute just quoted, and construing the statute, it was said that the words "quick with child" must be taken to be according to the common understanding, which was proved to be that a woman is not considered to be quick with child till she has felt the child alive and quick within her.

Mr. Russell on Crimes and Roscoe on Criminal Evidence cite, in support of the view taken by the Supreme Court of Pennsylvania, a precedent in 3 Chit. Crim. Law, 798, which, on examination, will not be found to be in conflict with the position that when the abortion or miscarriage is produced with the consent of the woman and before she is quick with child, it is not an offense at common law. All the counts of the indictment charge an assault upon the woman, and the conclusion from the averments is that the act was done without her consent, which is an assault at common law with aggravations; and while it is not alleged that the woman was quick with child, it is charged that she was pregnant and big with child, and that the act was done by the defendant wilfully, maliciously, and with the felonious intent to kill and murder the child. The whole proceeds upon the averment that she was pregnant with child, and so far advanced as to be regarded in law as having a separate existence, a life capable of being destroyed, which is equivalent to the averment that she was quick with child. (Commonwealth v. Parker, 9 Met.)

In the interest of good morals and for the preservation of society, the law should punish abortions and miscarriages, wilfully produced, at any time during the period of gestation. That the child shall be considered in existence from the

moment of conception for the protection of its rights of property, and yet not in existence, until four or five months after the inception of its being, to the extent that it is a crime to destroy it, presents an anomaly in the law that ought to be provided against by the law-making department of the government.   The limit of our duty is to determine what the law is, and not to enact or declare it as it should be.    In the discharge of this duty, and after a patient investigation, we are forced to the conclusion that it never was a punishable offense at common law to produce, with the consent of the mother, an abortion prior to the time when the mother became quick with child.    It was not even murder at common law to take the life of the child at any period of gestation, even in the very act of delivery.

The indictment in this case does not allege that the woman was quick with child.    It does not allege that the potion was administered with the intention to destroy the life of the child, nor that such was the result produced by it.

Judgment reversed, and cause remanded, with direction to dismiss the indictment.