Peoples v. Commonwealth.

---

CASE 76—INDICTMENT—OCTOBER 27.

## Peoples v. Commonwealth.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. MURDER—ABORTION.—Where the means used to procure an abortion result in the death of the mother, the person using the means is guilty of either murder or manslaughter, and not merely of involuntary manslaughter. Where the act is done with no intent to inflict serious injury, and in such a way that it is not, *per se*, likely to so result, but,

through negligence in the operation, death does ensue, the offense is but manslaughter.

2. SAME.—Section 2, of article 4, chapter 29, General Statutes, was not intended to meet such a case, and does not repeal the common law relating to it.

3. SAME—INDICTMENT.—The indictment in such a case being for the death of the mother, it is not necessary to allege that she was "quick" with child.

4. SAME—EVIDENCE.—A conviction may be had in such a case upon the statements of the deceased alone, as she is not an accomplice within the meaning of section 241 of the Criminal Code.

5. DYING DECLARATIONS—PREJUDICIAL ERRORS.—Statements made by the deceased five or six days before her death, detailing the circumstances of the injury, were admissible in evidence as her dying declaration, as it appears they were made by her under a sense of impending death. The fact that, subsequent to making those statements, she said to one of her physicians, after being told that her case was a grave one, that "if she was not going to live she wanted the truth known, but so long as there was a prospect of her getting well she wanted it suppressed," does not, in view of all the circumstances proved, show that she had ;any hope or expectation of surviving the injury.

But, even if these statements were incompetent, they were not prejudicial, as she subsequently made a statement, which was in evidence, and which was unquestionably competent, to the effect that the accused performed the operation, from the effect of which it is certain the death resulted; and while so much of that statement as did not relate to the circumstances attending the injury was incompetent, it was not prejudicial.

6. INSTRUCTIONS—PREJUDICIAL ERRORS.—While it was error to instruct the jury that they were " the sole judges of the credibility of the witnesses and of the weight to be given the testimony," such an instruction was not prejudicial.

BAKER, KINNEY & KINNEY AND S. M. BERNARD FOR APPEL-
LANT.

1. An indictment charging murder, with specifications showing a different. offense, is insufficient on demurrer. (Gen. Stats., chap. 29, art. 4, sec. 2; Trimble v. Commonwealth, 78 Ky., 176.)

2. One procuring an abortion upon herself is an accomplice in the crime, and no conviction can be had upon her testimony without corroboration. (Civil Code, sec. 240, 241.)

3. That a dying declaration may be competent the declarant must believe that she is *in extremis*, and when such declaration is reduced to writing, no oral evidence of additional or different statements is com-

petent. (Smith v. The State, 9 Humphreys; Vaughn v. Commonwealth, 9 Ky. Law Rep.; Wharton's Crim. Law, 181, 182.)

FRANK PARSONS FOR APPELLEE.

1. When the death is the subject of the charge, and the circumstances of the death are the subject of the dying declarations, and the declarant believes herself *in extremis*, such declarations are competent evidence without regard to whether the declarant stated her belief that she would die. (1 Greenleaf, 156-8.)
2. Abortion before quickening, with the consent of the mother, is not punishable, unless the mother die, and then it is murder. (Mitchell v. Commonwealth, 78 Ky., 204; 1 Bishop on Crim. Law, 328; State v. Moore, 25 Iowa, 128; State v. Dickinson, 41 Wis., 299; 1 Hale, P. C., 426.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellant, Mary A. Peoples, complains of her conviction for manslaughter upon the charge of committing an abortion upon Emma Wendelkin, resulting in her death.

The unfortunate girl was seen near the house of the accused, and when going and returning from that locality in the night time, when, as is claimed, the crime was committed. Unless this circumstance may be said to cast some suspicion upon the appellant as the perpetrator of it, there is nothing pointing to her in the least degree as the guilty offender, save the statements made by the deceased to various persons during the week that she survived the operation.

It is claimed there could be no conviction upon them, as section 241 of our Criminal Code provides: "A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence, tending to connect the defendant with the commission of the offense ; and the corroboration is not sufficient if it merely show that the offense was committed, and the circumstances thereof."

True, the deceased, if not an actor, was at least a consenting party to the deed. The law does not, however, regard her as an accomplice. She could not have been indicted for it. She is looked upon rather as the victim, than as a co-offender. (Dunn v. The People, 29 N. Y., 523; Commonwealth v. Wood, 11 Gray, 85; Same v. Brown, 121 Mass., 69; State v. Owens, 22 Minn., 238; Same v. Hyer, 39 N. J. L., 598.)

The indictment is not defective in failing to aver that the deceased was "quick" with child when the injury was inflicted. The authorities are somewhat divided upon the question whether at common law it is an offense at all to procure an abortion with the consent of the woman, when she is not "quick" with child. If the charge were for abortion merely, authority might be cited in support of this objection to the indictment. Indeed, the current of authority is in this direction. (Mitchell v. Commonwealth, 78 Ky., 204; State v. Cooper, 2 Zabr., 53; Abrams v. Foshee, 66 Am. Dec., 77; Commonwealth v. Parker, 9 Met., 263; Smith v. State, 33 Me., 48.)

There is some difference of opinion, however, upon this question. (Mills v. Commonwealth, 13 Pa. St., 633.) It does not arise in this case however. Here the charge is for the death of the mother as the result of means used to procure an abortion. The distinction between the two cases must be observed.

Nor is this properly a case of involuntary homicide. The act was not only immoral, violative of the law of nature, and deliberate in character, but reckless of life, and wrongful *per se*. The death of the woman may not have been intended; there may have been no

express malice against her. Neither is there in the case of one, who, knowing that people are passing upon a street, throws a stone from a housetop, resulting in death; but yet a killing under such circumstances is not involuntary manslaughter, or a killing *per infortunium*.

If this were but an involuntary homicide, then at common law, and in this State, the punishment could be but a fine and jail imprisonment, or one entirely inadequate to deter evil-disposed persons from its commission. The recklessness of the act forbids its being so regarded. Offenses and punishments must be so graded as to remedy the mischief. It has, however, never been held to be less than voluntary manslaughter. It is perhaps questionable whether even in mercy, or out of regard to the frailty of human nature, it should, under any circumstances, be so reduced as to one whose act is deliberately done, and known to the doer to be reckless of life and the interests of good society.

By at least the earlier common law it appears to have been nothing less than murder, although there may have been no intention to kill the woman. In 1 Russell on Crimes, page 539, it is said : "So where a person gave medicine to a woman to procure an abortion, and where a person put skewers into the womb of a woman for the same purpose, by which in both cases the women were killed, these acts were held clearly to be murder ; for, though the death of the woman was not intended, the acts were of a nature deliberate and malicious, and necessarily attended with great danger to the persons on whom they were practiced."

Blackstone says: "So also if one gives a woman with a child a medicine to procure abortion, and it operates so violently as to kill the woman, this is murder in the person who gave it." (4 Black. Com., page 201.)

The language of another eminent writer is: "If one administers a drug to a pregnant woman, or does to her any criminal act, the object of which is merely to produce an abortion; yet if in consequence of this act, dangerous in its tendency, the mother dies, or the child is prematurely born, and dies from the too early exposure to the external world, he is guilty of murder." (2 Bishop on Criminal Law, section 691.)

This doctrine should not be based upon the rule of law, that whenever an unlawful act, one *malum in se*, is done in the prosecution of a *felonious* intention, or the perpetration of a collateral felony, and death ensues, it is murder; because, as we have already seen, the weight of authority is that it is no offense to procure an abortion, unless the woman be *quick* with child; but upon the fact that it is a deliberate act, endangering her life. It was said in Smith v. State, *supra:* "If medicine is given to a female to procure an abortion, which kills her, the party administering it will be guilty of her murder. This is upon the ground that the party making such an attempt, with or without the consent of the female, is guilty of murder, the act being done without lawful purpose and dangerous to life, and malice will be imputed."

Where, however, it is done with no intent to inflict serious injury upon her, and in such a way that it is not *per se* likely to so result, but through negligence

in the operation death does ensue, we incline to the opinion, but with some hesitation, that it is but man-slaughter.

Mr. Wharton says: "*Production of Abortion.*— Supposing this is done in a way not to inflict serious injury on the mother, and the mother dies from negligence in the operation, there being no intent to kill, or to inflict serious injury, and no likelihood of such result, the offense, on the reasoning above given, is but manslaughter. It is otherwise when the intent is to seriously injure the mother, or the act is likely seriously to injure her. In this case her killing is murder." (Wharton on Homicide, section 66.)

Section 318 of the same work reads thus: "A woman desires to miscarry of a child with which she is pregnant, and assents to an operation being performed on her for this purpose; and she dies from the operation. Her assent, as we have already seen, is no defense to an indictment against the person performing the operation. If the intent was to kill or grievously injure her, the offense is murder; it is manslaughter if the intent was only to produce the miscarriage, the agency not being one from which death or great injury would be likely to result."

Conceding it to be the common law rule that one is not indictable for the commission of an abortion unless the child has quickened, yet all the authorities agree that if, from the means used, the death of the woman results, it is either murder or manslaughter.

It is earnestly urged that the statements made by the deceased, connecting the accused with the crime, were not admissible as dying declarations.

It is essential to their competency that they be made *in extremis*, and under a sense of impending death. If any expectation or hope of recovery exists, however slight, in the mind of the injured person, they are inadmissible.

Greenleaf says: "It is the *impression* of almost immediate dissolution, and not the rapid succession of death in point of fact, that renders the testimony admissible. Therefore, where it appears that the deceased, at the time of the declaration, had any expectation or hope of recovery, however slight it may have been, and though death actually ensued an hour afterwards, the declaration is inadmissible.

"On the other hand, a belief that he will not recover is not in itself sufficient, unless there be also the prospect of almost immediate dissolution." (1 Greenleaf on Evidence, section 158.)

These rules have been strictly adhered to by the courts. The declarations are admitted as evidence *ex necessitate*. Often there are no eye-witnesses to the commission of crime, and especially of a character like that now under investigation, save the injured party and the offender. The law has, therefore, made the statements of the deceased relative to the circumstances of the injury competent evidence, where his death is the subject of the charge, provided they are brought clearly within the rules governing their admission. This condition is imposed, among other reasons, because they are altogether *ex parte*, and yet of peculiar force and effectiveness as testimony. There is no cross-examination, and the conscience of the injured party alone prompts to truth. It should, therefore, act under a sense of impending dissolution.

In this case the deceased, upon the third day after the injury, detailed the circumstances of its commission to her physician. What she then said was admitted as testimony. It is not clear whether he then, or not until the sixth day, informed her that she could not live. His evidence is confused in this respect. He certainly did so upon the last-named day after consulting with another physician; and she then requested the presence of her family and a priest, but at this time made no statement as to the manner of her injury. She, however, told the lady of the house, before she made the statement to her physician, that she knew she would die from the injury; and then detailed to her the circumstances of its commission; and this statement, corresponding in substance to that made to the physician, was also allowed to go to the jury as evidence. From the time when she did this until her death, five or six days thereafter, she constantly grew worse. Upon the fourth day after the injury she said to her nurse that she knew she was going to die, and had so known from the time the injury was inflicted. To this witness she then made the same statement, in substance, as to the manner of the injury, and it was admitted in evidence. Upon the fifth day, however, she said to one of her physicians, after being told by him that her case was a grave one, that "if she was not going to live, she wanted the truth known; but so long as there was a prospect of getting well, she wanted it suppressed; but if we thought she was going to die, she wanted the truth made known."

It is contended that this statement shows she had

not relinquished all hope of recovery; and that her previous declarations, indicating the accused as the offender, were, therefore, inadmissible as evidence.

Upon either the sixth day, and after she had been informed that she must die, or the next day (the day of her death), the physician wrote out the substance, but not the detail, of what she had previously told him as to the injury to her, and upon its being read to her, she said it was correct. It was also introduced in evidence, and it states that the accused performed the operation upon her. The physician also testifies that when this was read to her, she again detailed the circumstances of the injury, and the fair inference from his testimony is that her statement, then made, corresponded with that previously made to him, and to which he had already testified.

In our opinion, however, all of her statements above alluded to were made by her under a sense of impending death. If this were doubtful, they should be rejected.

The statement made to her physician upon the fifth day, and above quoted, does not in our opinion, in the light of all the other circumstances proven, show she in fact had any hope or expectation that she would survive the injury; but that, upon the contrary, she felt from the time when it was inflicted until her death that it must result fatally. Whether this was so or not may be gathered from her conduct, her evident danger, the opinions of her physicians given to her, her declarations, and all the attending circumstances. The law does not require as a condition to the competency of the statement as a dying declara-

Peoples v. Commonwealth.

tion, that the injured party shall, in express words, declare that he knows he is about to die, or that he shall make use of equivalent language. His recognition of impending dissolution may be shown in this way, but the law does not limit to this mode alone.

We do not see, however, how the accused could have been prejudiced by the evidence relative to the statements made by the deceased prior to the written one. It was unquestionably competent; and it states that the accused performed the operation, from the effects of which it is certain the death resulted. It is true, the deceased was a party to the deed. She, however, acted from a sense of shame; and however censurable her conduct may have been, it can not shield the accused, who, from a purely sordid motive, caused her death, and outraged a law vital to the existence of good society.

Judgment affirmed.

———

To a petition for rehearing, Judge HOLT delivered the following response of the court:

The offense charged against the appellant is well calculated to create prejudice, instead of sympathy. She can not rely upon the latter for an acquittal. She must look to the law in its justice and wisdom to afford her a fair trial. It is highly important in such a case that it should be properly administered. It affords a much safer criterion of justice and fairness of trial, than excited public opinion. She is as much entitled to stand beneath the *ægis* of the law, and claim the protection of its safeguards and presump-

tions in behalf of life and liberty, as one charged with a lesser crime. The same law is to be meted out to all. Justice is sightless when she balances her scales.

Prompted by these considerations, and with a view to certainty, in determining whether the trial below was a fair one, we have carefully considered the petition for a rehearing.

Counsel insist that the demurrer to the indictment was well taken, upon the ground that the accusatory part of it is for murder, while the facts stated as constituting the offense make it a statutory one, not embraced by the accusation; and that this court, in considering it, has looked to the common law alone and improperly disregarded the statute.

It reads thus: "Any person who shall willfully strike, stab, thrust or shoot another, not designing thereby to produce or cause his death, and which is not done in self-defense, or in an attempt to keep and preserve the peace, or in the lawful arrest or attempt to arrest a person charged with felony or misdemeanor, or in doing any other legal act, so that the person struck, stabbed, thrust or shot shall die thereof within six months next thereafter, shall be confined in the penitentiary not less than one nor more than six years." (General Statutes, chapter 29, article 4, section 2.)

It was held in the case of Trimble v. The Commonwealth, 78 Ky., 176, that an indictment for murder did not embrace the offense created by this statute; and that, therefore, upon the trial of one for the first-named crime, no instruction could be given to the jury relative to the latter.

It is now contended that this statute repealed the common law in a case like that now under consideration, and that the offense set forth in the indictment is not murder.

It is true the indictment does not charge that the act was done with the intent to kill the deceased, but avers that the purpose was to produce an abortion. It does, however, charge that the accused "did willfully, maliciously, unlawfully, feloniously and of her malice aforethought kill" her; but aside from this, we do not think the statute takes a case of this character out of the common law rule relating to murder and manslaughter, or makes it a different offense from what it is under the common law. In short, the statute does not apply to it. It is manifest that the law-making power did not so intend. As already stated, by the common law, if life be destroyed in the commission of an abortion, whether the woman be *quick* with child or not, it is murder, or at least manslaughter in the destroyer. This statute applies to cases where the injury is done without the consent of the injured party, and with an intent upon the part of the doer to so do it. This is manifest from the fact that the doer is not liable to punishment under it, if the act be done "in self-defense, or in an attempt to keep and preserve the peace, or in the lawful arrest or attempt to arrest a person charged with felony or misdemeanor, or in doing any other legal act."

In a case like that of the accused the party is liable, although the death of the victim may not have been intended, and the act done with her consent, because it is in its character wrongful *per se,* reckless of life,

and calculated to destroy it. The statute was not intended to meet such a case, and does not repeal the common law relating to it.

A dying declaration must relate to the circumstances attending the injury. Only so much of it is competent as details the manner of it. So much of the statement of the deceased as relates to the interview with the accused preceding that when the operation was performed was incompetent as evidence. This is true also of that portion of the written declaration of the deceased relative to her pregnancy. But the one merely detailed an interview with the accused, and the making of the contract to perform the operation, and the other to a fact, which was indisputably proven by the physician who attended the deceased; and the accused could not well have been prejudiced by the testimony. Its non-introduction could not have tended to produce a different result.

The jury were told that they were "the sole judges of the credibility of the witnesses and of the weight or consideration to be given the testimony of each witness."

Such an instruction has been repeatedly condemned by this court. Abstractly, it is correct. Yet there is no reason for giving it. It is the province of the jury to give to the evidence of each witness such weight as it is entitled to in their judgment. This they will do without such an instruction; and it, in some cases, where the circumstances are peculiar, may unduly influence them. It is better in all cases to leave them to consider the evidence without any suggestion from the court as to the manner of consideration. This

court would, however, hesitate to reverse a case upon this ground alone; and, in our opinion, the circumstances of this one do not fairly authorize an inference even, that the accused may have been prejudiced by the erroneous instruction, or. that if it had not been given the verdict might have been different.

The petition for a rehearing is overruled.