Commonwealth v. Matthews.

CASE 46—INDICTMENT—NOVEMBER 14.

# Commonwealth v. Matthews.

APPEAL FROM HENDERSON CIRCUIT COURT.

1. THE COMMONWEALTH MAY PROSECUTE AN APPEAL from a decision of the trial court, although not final. Therefore, where there has been a trial and the jury has failed to agree, the Commonwealth may prosecute an appeal in order that this court may review the decisions of the trial court in admitting and rejecting evidence, and in giving and refusing instructions.

2. DEGREES OF HOMICIDE.—The general rule is, that one who causes death by his negligence is criminally responsible, whether he was at the time engaged in legal or illegal business. If the business be in character felonious, then he is guilty of murder. If legal, and homicide result from negligence in the discharge of it, it is manslaughter. This rule, however, is subject to exception, as when the act, although careless in itself, is done under such circumstances that it could not reasonably be supposed injury would result.

3. EVIDENCE.—Under an indictment for manslaughter, it was incompetent to prove declarations of the defendant for the purpose of showing malice.

4. DYING DECLARATIONS.—Whether a statement offered as a dying declaration was made by the defendant when he was in extremis, and had given up all hope of life, may be determined, not only by what he may say, but by his evident danger and all the surrounding circumstances.

About fifteen minutes after he was shot, the deceased, when lying upon the ground bleeding and suffering, said he hoped he would live long enough to take the gun home; he died in about twenty minutes. Held—That a statement made by the deceased under these circumstances was made under a sense of impending death.

5. SAME.—The statement of the deceased that he and the accused were playing, and that the shooting was an accident, was the statement of a fact, and not the mere expression of an opinion, and was competent.

6. INVOLUNTARY MANSLAUGHTER.—The court, in instructing the jury as to involuntary manslaughter, should have told them, in substance, that if they believed, from the evidence, the accused had reasonable grounds to believe, and did believe, there was no danger in handling the gun as he did, and that it was done without any purpose of harm on his part, but further believed that the killing resulted from the

careless use of the weapon, they should find him guilty of involuntary manslaughter; but if they believed the killing was accidental and without carelessness, they should acquit him.

P. W. HARDIN, ATTORNEY-GENERAL, AND J. H. POWELL FOR APPELLANT.

1. In felony cases the Commonwealth may appeal from a ruling of the lower court, whether final or not. (Criminal Code, section 335; Commonwealth v. Cain, 14 Bush, 525.)

2. It was competent for the Commonwealth to prove the threat of defendant, that he intended to kill his man soon. Such a threat may be proved, although it does not designate any person. (Burrill's Circumstantial Evidence, p. 339, 2d ed.; Hopkins v. Commonwealth, 50 Penn. St., 9; Dixon v. State, 13 Fla., 636; 1 Green's Crim. Rep., 687; Commonwealth v. Shaw, 111 Mass., 411; Johnson v. Commonwealth, 9 Bush, 227.)

3. A statement is not admissible as a dying declaration if it appears that deceased had the *slightest* hope of recovery, although he died within a very short time afterward. (Wyatt v. Commonwealth, 8 Ky. Law Rep., 55; Peoples v. Commonwealth, 10 Ky. Law Rep., 520; 1 Bishop's Crim. Prac., sec. 1212; People v. Hodgdon, 55 Cal., 72; Dixon v. State, 1 Green, 687; People v. Westlake, 4 Crim. Law Magazine.)

Something more must appear than a mere belief upon the part of deceased that he would ultimately die from his injuries. (Vaughn v. Commonwealth, 9 Ky. Law Rep., 644.)

It was error to admit the statement of deceased when the witness could not state whether deceased was conscious or not. (Tracy v. People, 97 Ill., 101; Montgomery v. State, 11 Ohio, 424; People v. Williams, 3 Parker, 84; Dixon v. State, 13 Fla., 636.)

Dying declarations must speak to *facts* only, and not to mere matters of opinion. (1 Bishop's Criminal Prac., 3d ed., sec. 1211; Roscoe's Crim. Evidence, 32; Wharton's Crim. Evidence, sec. 294|; Montgomery v. State Ind. Sup. Ct., 3d Crim. Law Magazine; Binns v. State, 46 Ind., 311; Whitley v. State, 38 Ga., 50; State v. Williams, 67 N. C., 12; Collins v. Commonwealth, 12 Bush, 272.)

4. The instruction as to involuntary manslaughter was erroneous. (York v. Commonwealth, 82 Ky., 361; Chrystal v. Commonwealth, 9 Bush, 670; Sparks v. Commonwealth, 3 Bush, 111; Commonwealth v. Lester, 3 Crim. Law Magazine.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

William Matthews was tried upon the charge of manslaughter for killing Henry Alves by shooting

him.  The jury failing to agree, were discharged, and
there has never been any final disposition of the case.
During the progress of the trial the Commonwealth
excepted to certain decisions of the court upon legal
points, and by this appeal questions their correctness.
Its right to appeal in the absence of any final judg-
ment is the first and principal question presented.

It is claimed that the statute gives the right, and
for the reason that the law may not only be properly
administered in this, but other cases.  It is clear that
a defendant can only appeal from a final judgment.
Is this true of the Commonwealth?  Section 335 of
the Criminal Code provides: "An appeal shall only
be taken on a final judgment, *except on behalf of the
Commonwealth*.  An appeal by the Commonwealth
from *a decision* of the circuit court shall not suspend
the proceedings in the case.  The decision of the
Court of Appeals shall be obligatory on the circuit
courts as being the correct exposition of the law."

Whatever may be thought of the policy of the rule,
this provision plainly gives to the State the right to
an appeal from any decision of the trial court, al-
though it be not of a final character.  Wherever the
Criminal Code speaks of an appeal by the defendant
it is from "*a judgment*," and when by the Common-
wealth it is from "*a decision*."  Moreover, it is ex-
pressly provided that an appeal by the Commonwealth
"*shall not suspend the proceedings in the case*," as
may be done where the defendant appeals; and sec-
tion 337 of the Criminal Code declares that the Attor-
ney-General may take the appeal, if satisfied "that
error has been committed to the prejudice of the Com-

monwealth, upon which it is important to the correct
and uniform administration of the criminal law that
the Court of Appeals should decide."

We must not be understood, however, as intimating
that this statutory rule is without reason. It is sup-
ported by it. When a final judgment is rendered ·
against a defendant, he may, upon appeal, get the
benefit of any error which has, at any time during
the progress of the case, been committed against him,
save those errors to which, by the Code, no exception
can be taken. In short, he can not be injured by the
denial of the right to appeal, save from a final judg-
ment. Upon the other hand, if a defendant be tried
and acquitted, he can not, of course, be again tried,
although his release may free a guilty man, and be
the result of erroneous decisions of legal questions
by the trial court. The injury to the State and the
public is then beyond cure as to that particular case.
Owing to this fact, doubtless, the Legislature saw
proper to give to the Commonwealth the right to an
appeal from a decision of the trial court, although
not final in character. It gives no advantage to the
State over the accused. He is amply protected, as we
have already seen, by the right to appeal from a final
judgment. It is indeed only fair to the public, and
proper for its protection, because otherwise the guilty
might escape by an acquittal resulting from legal
errors. (Commonwealth v. Cain, 14 Bush, 525.)

If it be urged that the case now stands as if no trial
had ever taken place; that the rulings of the court
then made are now nullities, and that, therefore, the
idea of an appeal from them is absurd, the answer

is, that the Legislature, doubtless, supposed, and with reason, that the same questions would arise upon a future trial, and that it was necessary to a fair administration of justice to allow the State to at once correct any error by an appeal.

As the case is yet pending, we shall not detail the circumstances of the tragedy as we gather them from the evidence, further than is absolutely necessary to the consideration of the questions presented..

It is contended by the Commonwealth that the shooting was intentional, or, if not, that it was the result of such a reckless and careless use of the gun as to be criminal; while the accused claims that it was accidental, and occurred under such circumstances that, although the act was careless in itself, yet he had the right to suppose no injury could result.

The general rule is, that one who causes death by his negligence is responsible, whether he was at the time engaged in legal or illegal business. If the business be in character felonious, then he is guilty of murder. If legal, and homicide result from negligence in the discharge of it, it is manslaughter. This rule is, however, subject to exception when, for instance, the act, although careless in itself, be done under such circumstances that it could not reasonably be supposed injury would result. (Chrystal v. Commonwealth, 9 Bush, 669; York v. Commonwealth, 82 Ky., 360.)

Upon the trial the Commonwealth offered to prove that the accused had, about two weeks before the killing, said that his father had killed his man, and that he intended to do so soon. This evidence was rejected.

Waiving all question on account of the indefinite character of it by reason of no person being named, or in any way to the least extent indicated, and the fact that it was spoken so long before the killing, yet the only purpose in proving it was to show malice, and the accused was only indicted for manslaughter. Clearly it was incompetent.

The accused was allowed, over the objection of the Commonwealth, to prove as a dying declaration what the injured party said after the shooting as to the circumstances of it. It is urged that the proper foundation was not laid for its introduction, and that the statement was in itself incompetent. It was proven that about fifteen minutes after he was shot the deceased, when lying upon the ground bleeding and suffering, said that he hoped he would live long enough to take the gun home, and that he died in about twenty minutes. The witness says that he did not say whether he believed he would die or recover, and that he (the witness) did not know whether he was conscious or not when he made the statement.

It is well settled that a statement to be admissible as a dying declaration must be made when the party is *in extremis*, and has given up all hope of this life; but whether this be so or not may be determined not only by what he may say, but by his evident danger and all the surrounding circumstances. The injured party need not, in express words, declare that he knows he is about to die, or make use of equivalent language. (Peoples v. Commonwealth, 87 Ky., 487.)

Tested by this rule, we think the statement in this instance was made under a sense of impending death,

Commonwealth v. Matthews.

and that what the injured party then said also shows he was conscious not only of it, but of what he was saying as to the transaction. The statement, in substance, was that he and the accused were playing, and that it was an accident.

To be competent as a dying declaration, the statement must not only relate to the immediate circumstances of the transaction resulting in the injury, but it must detail facts, and not the opinion of the declarant. In our opinion, the statement in this instance conforms to this rule. It is unlike the case where the injured party declared that he had been killed for nothing. This was purely his opinion and inference. Here the injured man said that he and the accused were engaged in play, and that the shooting was an accident. This, in our opinion, was the statement of a fact, more than the giving of an opinion, and the court properly permitted it to be proven.

The instruction as to involuntary manslaughter, given at the request of the defendant, is too general in terms and expression. The jury, upon this question, should, in substance, have been told that if they believed from the evidence the accused had reasonable grounds to believe, and did believe, there was no danger in handling the gun as he did, and that it was done without any purpose of harm upon his part, but further believed from the evidence, to the exclusion of a reasonable doubt, that the killing resulted from the careless use of the weapon, then they should find him guilty of involuntary manslaughter, and fix his punishment at fine and imprisonment in the county jail, in their discretion; but if they believed from the evidence

the killing was accidental, and without carelessness, they should acquit him.

This opinion is ordered to be certified to the lower court.