## Commonwealth v. Roberts.

(Decided October 26, 1911.)

### Appeal from Floyd Circuit Court.

1. Bribery—Indictment for.—Under section 1586 of the Kentucky Statutes making it an offense for "any person to be guilty of receiving a bribe for his vote at an election, the indictment should give the date at which the election was held, the name of the candidate the accused was bribed to vote for, or the fact that he was bribed not to vote, as the case may be, that he accepted the bribe, describing it as nearly as may be, that induced by the bribe or in consideration therefor he agreed to vote for the person he accepted the bribe to vote or not to vote at all. It is not essential that the indictment should charge that the person bribed did in fact vote for the person he agreed to vote for, as it is the acceptance of the bribe to vote or not to vote, as the case may be, that constitutes the offense.

2. Bribery—What Constitutes Offense.—It is as much an offense against the bribery laws to bribe a person not to vote as it is to bribe him to vote, or, in other words, to corruptly influence him not to cast his vote as to corruptly influence him to cast it, as, in either event, the person bribed receives a bribe for his vote, or, in other words, sells his vote. It is the act of receiving a bribe for his vote that the statute was primarily intended to punish, and not the act of voting or not voting that might follow the bribe taking.

3. Bribery—"Strong Corroborating Circumstances".—Under the statute a conviction cannot be had upon the testimony of a single witness, unless it be sustained by "strong corroborating circumstance"; and so while the evidence of the prosecuting witness might ordinarily be sufficient to submit the case to the jury, yet if his evidence is not sustained by "strong corroborating circumstances" a conviction cannot be had.

JAMES BREATHITT, Attorney General, and W. H. MAY for appellant.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

At the February term, 1911, of the Floyd Circuit Court, the grand jury returned the following indictment against William Roberts:

"The grand jury of Floyd County, in the name and by the authority of the Commonwealth of Kentucky, accuse William Roberts of the offense of unlawfully receiving a bribe for his vote at an election, committed as follows:

"The said William Roberts on the 27th day of February, 1911, in the county and circuit aforesaid, and within two years before the finding of this indictment, did unlawfully and corruptly accept and receive a bribe for his vote, to-wit: Lawful money of the United States of America, the amount, kind and denominations thereof is to the grand jury unknown, from H. L. Porter; the said William Roberts accepted said bribe at the general November election 1910 in Johns Creek Precinct, Floyd County, Kentucky, at which election candidates for Representative for Congress in the Congress of the United States of America from the Tenth Congressional District of Kentucky were being voted for, and said William Roberts then and there accepted said bribe for his vote for A. F. Byrd, who was a candidate for Representative in Congress from said district, and against John W. Langley, who was likewise a candidate for said office; against the peace and dignity of the Commonwealth of Kentucky."

The indictment was found under sections 1586 of the Kentucky Statutes, reading:

"Any person guilty of receiving a bribe for his vote at an election, or for services or influence in procuring a vote or votes at an election, shall be fined from fifty to five hundred dollars, and be excluded from office and suffrage."

The word "bribe," as used in this section is defined in sub-section one thereof, as follows:

" 'Bribe,' or 'bribery' means any reward, benefit or advantage, present or future, to the party influenced or intended to be influenced, or to another at his instance, or the promise of such reward, benefit or advantage."

And, in section 1595, it is declared that:

"No prosecution shall be had under this chapter where the penalty is less than confinement in the peni-

tentiary, unless the same is commenced within two years from the time of the commission of the offense.''

Upon the trial of the prosecution, the court at the conclusion of the evidence introduced in behalf of the Commonwealth directed the jury to find the defendant not guilty, and this appeal is prosecuted by the Commonwealth for the purpose of having the law certified.

A general demurrer was filed in the lower court to the indictment, and overruled; but we are advised by the brief for the Commonwealth that it was earnestly pressed upon the attention of the trial court that the indictment was defective in that it did not state a public offense or an offense under the statute, and so for future guidance we are requested to pass upon the question of its sufficiency. It will be noticed that the indictment charges in one paragraph that the offense was committed on the "27th day of February, 1911," and in the other that it was committed "at the November election 1910." We do not, however, think the discrepancy in the dates mentioned in the indictment was sufficient to invalidate it. In place of the words and figures "27th day of February, 1911," the words and figures "———— day of November, 1910," should have been used, as it is manifest from the indictment that the offense intended to be charged was committed at the November election, 1910. The error in inserting the words and figures "27th day of February, 1911," did not and could not mislead the accused. Indeed, the words "on the 27th day of February, 1911," might with much propriety have been omitted from the indictment. Under the statute it is necessary that the prosecution should be commenced within two years next after the offense was committed, and the indictment should show on its face that the offense was committed within the two years. This fact is, however, plainly shown by the statement in the indictment that it was committed at the November election, 1910.

The next objection urged to the indictment is that it is defective in failing to charge that Roberts in consideration of the bribe voted for Byrd. It will be noticed that the averment is that "said Roberts then and there accepted said bribe for his vote and agreed to vote for A. F. Byrd," but it does not charge that he in fact did vote for Byrd or in apt terms that he was induced by the bribe to vote for him, although the reasonable inference is that he was influenced by the bribe to so vote. Section 122 of the Criminal Code provides that:

"The indictment must contain— * * * A statement of the acts constituting the offense, in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case."

If an indictment merely charged the accused in the language of the statute with the offense of "receiving a bribe for his vote at an election," it would not sufficiently comply with the section of the Code, supra, providing in substance that the indictment shall advise the accused of the nature of the accusation against him. We think that an indictment under this statute should give the date at which the election was held, the name of the candidate, or group of candidates under a device the accused was bribed to vote for, or, that he was bribed not to vote for, or that he deprived himself of the privilege of voting by selling his registration certificate, or otherwise; that he accepted the bribe—describing it nearly as may be, and that induced by the bribe or in consideration therefor he agreed to vote for the person, or group of persons under a device he accepted the bribe to vote for, or not to vote for or deprived himself of the priviledge of voting by selling his registration certificate or otherwise, and the different forms in which the offense was or might have been committed may be charged in separate counts. Commonwealth v. Hargis, 124 Ky., 363. It is not essential that the indictment should charge or the evidence show that the person bribed did in fact vote for the person or group of persons he agreed to vote for or accepted the bribe to vote for. It is not the fact that the person bribed voted for a particular person or group of persons, that constitutes the offense, but the fact that for a bribe he agreed to vote for such person or group of persons, or to refrain from voting for any person, or by selling his registration certificate deprived himself of the right to vote. The party who accepted the bribe may not in fact have voted at all, or he may have voted for another person or group of persons than the one he was bribed to vote for; but, nevertheless, he would be guilty under the statute if in consideration of the bribe he agreed to vote for a certain person, or to vote for a group of persons under a device, or to refrain from voting for any person, or by selling his registration certificate deprived himself of the right to vote. If

it was necessary that the indictment should charge, and the evidence show that the person accepting the bribe voted for a particular candidate, or group of candidates under a device, and the voter marked his own ballot, it would be difficult and many times impossible to secure a conviction, although there might be sufficient evidence to show that he accepted the bribe and agreed to vote for a certain candidate, or group of candidates, because under the secret ballot system no person except himself could tell or know how he voted. The effect of a rule of construction like this would be to defeat the purpose of the statute and enable persons offending against it to escape punishment because of the difficulty the law had placed in the way of securing evidence necessary to make out a case. It is as much an offense against the bribery laws to accept a bribe not to vote, or to forfeit the right to vote, as it is to accept a bribe to vote, or, in other words, to agree for a reward, benefit or advantage not to vote as to agree for a reward, benefit or advantage to vote. In either event, the person bribed receives a bribe for his vote—in other words, sells his vote. It is the act of receiving a bribe for his vote that the statute was primarily intended to punish, and not the act of voting or not voting that might follow the bribe-taking. Thus, in Commonwealth v. Glass, 140 Ky., 589, in holding that it was an offense against the bribery statute to buy registration certificates, we said:

"Under the statute the voter cannot vote unless he presents to the election officers his certificate of registration. To buy the certificate in order to prevent him from voting is to buy him not to vote. To buy a man not to vote is no less bribery under section 1596a, sub-sec. 12, than to buy him to vote a certain way. The voter should be left entirely free in his right of suffrage, and any influence of this right by the payment of money or other thing of value is under the statute bribery of the voter."

"The same reason requires us to hold that to buy an election certificate is bribery under section 1586, Ky. St. The person who sells his certificate sells his vote at the election; for he cannot vote without the certificate. To buy him not to vote is to buy his vote. There is no difference in the eye of the statute between the person who for money votes for a certain candidate, and the person who for money refrains from voting. The only practical difference between buying a vote to be cast for a certain ticket, and buying a vote not to be cast at the election is

that the latter is a safe way of investing the money under our ballot system of voting where the voter belongs to the adverse party.''

It is more important that the voter should be prevented from accepting a bribe as a consideration for his vote than that he should cast his vote for a certain person or not cast it at all. The wrong to society and to the security of our institutions is accomplished when the elector is corrupted; as no deadlier blow can be struck at civil government than the one that is aimed at the right of the voter to cast a free ballot. The bribe-taker, and the bribe-giver, in high and low places, are the greatest, most persistent and most insiduous foes that modern government has to contend with, for the evil effects of their corrupt bargaining impairs the strength and weakens the efficiency of every department of government that it touches. But at no place in our system is the vice of bribery so prevalent or its evil effects so pronounced as in the prolific field of popular election. It is here that the widest opportunity for debauching the elector is afforded, and the prospect of discovery and punishment the least. In view of this lamentable condition everywhere existing, it needs no argument to show that the highest consideration of public policy demand that the statute protecting popular elections from the vice of bribery should be made as effective as possible. Influenced by these and other like considerations, the legislature has endeavored to place every safeguard about the ballot, so that it may be a free, fair, honest and intelligent expression of the voters' will, and to better accomplish this purpose it is provided in section 1591 of the Kentucky Statutes that the provisions against election offenses shall be ''liberally construed, so as to prevent any evasions of its prohibitions and penalties by shift or device.'' Commonwealth v. Headley, 111 Ky., 815. We think the indictment was sufficient.

The next question is—did the court err in ruling that the evidence was not sufficient to justify a submission of the case to the jury. Before considering the evidence introduced it may be well to examine the statute for the purpose of ascertaining what change, if any, it makes in the measure of evidence necessary to sustain a conviction from that prevailing in ordinary criminal cases. The statute provides in section 1594 that— .

''The jury shall never convict any one under the provisions of this chapter upon the testimony of a single

witness, unless sustained by strong corroborating circumstances.''

This statute does not mean that a conviction cannot be had on circumstantial evidence, but only that a conviction shall not be had on the evidence of a single witness, unless it be corroborated. To illustrate, if the Commonwealth should introduce a single witness who gave direct and positive evidence to the act of bribery, a conviction could not be had on his evidence alone, unless corroborated, and, of course, a conviction could not be had on the evidence of a single witness who testified to facts and circumstances sufficient in ordinary cases to secure a conviction, unless his evidence was corroborated. But, if the Commonwealth introduces more than one witness, or several witnesses, who each testify to facts and circumstances in the aggregate sufficient to show the guilt of the accused to a properly instructed jury, a conviction may be had, although there may be no direct or positive evidence of bribery. In this class of cases, as indeed in all others, the Commonwealth may show the guilt of the accused by circumstantial evidence, and also the corroborating facts by circumstantial evidence. In other words, it is not necessary that the principal witness for the Commonwealth should be able to testify positively to the fact that the accused was bribed, as, for instance, that he gave the bribe and it was accepted and the party bribed agreed in words to vote for the bribe, as this fact may be shown by circumstances; and, if the facts so testified to by the prosecuting witness are corroborated by strong circumstantial evidence, a conviction may be had. If this were not so, and it was essential that the principal witness should give direct or positive evidence of the bribery, there would seldom be a conviction, although the circumstantial evidence made by the prosecution might be sufficient to convince a jury beyond a reasonable doubt that the person accused was in fact bribed. The difficulty of obtaining direct evidence in this class of cases is greater than perhaps in any other, owing to the secrecy that usually surrounds the transaction; and the fact that as a rule only two persons—the bribe-giver and the bribe-taker—are actually concerned in it.

With this understanding of the nature and quantity of evidence necessary to sustain a verdict of guilty, or take the case to the jury, we will look into the testimony offered by the Commonwealth. Henry Porter, the principal witness for the Commonwealth, testified that he

and Jack May were at the polls in the Johns Creek precinct as supporters and workers for Byrd at the November election in 1910. He said that he had a large amount of money, as did also May, for the purpose of securing votes for Byrd, and that he gave the accused, Roberts, four or five dollars in money. He was further inquired of, and answered, as follows—

"Q. What did you give him that money for?"

"A. Well, my idea about it was to get his vote for Byrd."

"Q. Do you remember the exact amount?"

"A. No, sir, I am not sure about it; it was either four or five dollars."

"Q. Did you have any money to spend in the election?"

"A. Yes, sir."

"Q. Whereabouts on the election grounds were you, if you remember the particular place and can designate it."

"A. Well, there was a commissary store house in a little building, I don't remember what kind of a building it was; and it was behind a little building, just out back of the store-house."

"Q. How came you to get on this deal with Mr. Roberts, if you remember particularly?"

"A. I don't know; as well as I remember, I believe Jack May and I had a talk about it, and he asked me to see him; I had been behind the little building talking to another party, and met Mr. Roberts coming toward the little building; he asked me to divide my purse with him, and I did so."

"Q. You said a while ago, I believe, Mr. Porter, that when you gave him this money, it was your idea that you were giving it to him to get him to vote for Mr. Byrd; now, why did you so understand it?"

"A. Well, I thought he would vote for him."

"Q. Did you tell him what you were doing—what the money was for?"

"A. I don't remember whether I did or not."

"Q. Now, were you and Mr. Jack May working in co-operation with each other and trying to influence as many voters as you could for Mr. Byrd?"

"A. Yes, sir, that was the idea."

"Q. Did you both have money to spend for that purpose?"

"A.  Yes, sir."

"Q.  Tell the jury whether or not the money that Mr. Roberts asked you to divide with him and that you did divide with him, was a campaign fund used in that election?"

"A.  I think the money belonged to Jack May and myself."

"Q.  Was the campaign fund being used for that purpose?"

"A.  Yes, sir, I think the money belonged to Jack May and myself; we had got out of money about noon, and I think me and him put in $50 apiece just after dinner, and I think that was the money."

"Q.  Did he tell you when he asked you to divide your purse with him what he wanted you to divide it for?"

"A.  No, sir, I don't believe he did."

"Q.  Had he seen you working with the voters around about that election house?"

"A.  I presume he had; I don't know."

"Q.  Had you been very active working in the election, you and Mr. May?"

"A.  I had done all I could; I don't know about Jack."

"Q.  Did you owe Mr. Roberts anything for which you gave him that money?"

"A.  No, sir, not that I know of."

"Q.  Were you engaged in any other business there on that election ground except to buy votes for the candidate you represented?"

"A.  No, sir."

Jack May, who was assisting Porter in the nefarious business of buying votes at this precinct, and who was the only other material witness introduced for the Commonwealth, testified as follows—

"Q.  Did you take a campaign fund with you—a corruption fund—to bribe voters with?"

"A.  I took some money with me."

"Q.  How much did you take?"

"A.  I don't remember exactly now, but I believe I had $125.00."

"Q.  You and Mr. Porter were working harmoniously and co-operating together in that election?"

"A.  Yes, sir, we were the best we could."

"Q.  Did you see Roberts there with Porter?"

"A.  I saw him go around the rear end of the store

building in which they were voting, and I went over into a little garden just at the other side of it with another fellow, and while I was over there I saw him and Mr. Porter standing talking behind a little house that stood behind the little store.''

"Q. Did you see them exchange anything?''

"A. No, sir, I did not.''

"Q. Hear them talking?''

"A. Yes, I heard them talking, but I didn't hear what they were talking about.''

We do not deem it necessary to express an opinion as to whether or not the circumstances and facts brought out in the testimony of Porter are sufficient to authorize the reasonable inference that he furnished the money to Roberts for the purpose of bribing him to vote for Byrd, and that Roberts accepted the money for this purpose, as the corroborating evidence was not sufficient to take the case to the jury. But in saying this, we wish it understood that we are not disposed to extend the protection afforded by the necessity of corroboration beyond the fair limits needful to carry out the legislative intent as expressed in the statute. We appreciate the obstacles that the Attorney for the Commonwealth has to overcome in prosecutions like this, and the difficulty in obtaining evidence against persons guilty of this offense. The bribe-taker and the bribe-giver are alike denounced by the statute. The offense of each is equally odious in the sight of the law. Both are enemies of good government, and while it is true that section 1594 of the Kentucky Statutes provides that if either the bribe-taker or the bribe-giver gives evidence against the other ''he shall stand discharged from all penalty for any violations of this chapter so necessarily disclosed in his testimony as tending to convict the accused,'' it is nevertheless a fact that this exemption from prosecution does not always have the effect of inducing the witness to tell the whole truth. When pressed for information, he will too often —as in this case—take refuge behind a bad memory of what occurred.

We are asked by counsel for the Commonwealth to lay down some rule as to the quantity of evidence necessary to secure a conviction in cases of this character, but this we cannot do as each case must be adjudged by the facts it presents.

Wherefore, the judgment is affirmed.