## Begley v. Commonwealth.

(Decided May 23, 1913.)

### Appeal from Perry Circuit Court.

1.  Homicide—Evidence—Dying Declaration.—Where the deceased is mortally wounded and is told by the attending physician that he will not get well, and remarks that he hates to die on account of his children, his dying declaration is admissible, as it appears that it was made when the deceased had abandoned all hope of life and with a sense of impending dissolution.

2.  Homicide—Instructions.—In a prosecution for homicide evidence examined and held sufficient to justify an instruction on the reckless handling of a pistol.

3.  Homicide—Instructions—Involuntary Manslaughter.—In a prosecution for homicide the evidence examined and held that the failure to give an instruction on involuntary manslaughter was not prejudicial error.

WOOTTON & MORGAN for appellant.

JAMES GARNETT, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

Defendant, Brown Begley, was indicted for the murder of Jesse Barger. A jury found him guilty of voluntary manslaughter and he was given an indeterminate sentence of from two to twenty-one years in the penitentiary. From the judgment of conviction he appeals.

The homicide took place under the following circumstances: Defendant, John Deaton and Jesse and Henry Barger were pitching horseshoes near a storehouse belonging to John Deaton. Defendant and Henry Barger were partners, while Deaton and Jesse Barger were partners. At the end of each game the losers would set up to cider. When defendant came to the Deaton store in the afternoon he carried a pistol in a holster around his waist. When the playing began he left the pistol in the store. According to the evidence of Henry Barger, a brother of the deceased, there was a dispute as to who won the last game. Jesse Barger claimed his shoes were the closer, the defendant claimed the contrary. Jesse Barger said "Maybe you will give me the lie over it." The defendant told him that he was a liar. Jesse Barger then said "You are a lying son of a bitch." Defendant said "I won't take it," and started down the road toward the storehouse. He went into the storehouse and came out "with his pistol and her cocked and his fingers on the trigger and hold of her this way." He had hold of the pistol with both hands. When defendant came out of the store John Deaton grabbed at him and missed him. Garrett Bowling then grabbed defendant. Witness and John Deaton then began to strike and throw each other around. John Deaton threw witness on the ground. Just after he caught John Deaton the last time the pistol fired. When witness arose defendant and Jesse Barger both had hold of the pistol. Jesse said "give me the pistol." He also said "He shot me." When Begley came out of the door Jesse Barger was from thirty-five to forty feet away. He started toward the store with two horseshoes in his hand. At the time Jesse Barger was shot he did not have either of the horseshoes in his hand. According to John Deaton, Henry Barger himself told defendant to get his pistol, saying "we won't take this." The deceased, Jesse Barger, said, "If you want to fight, you can fight us a fair fight; we haven't got any pistol; you needn't go and get your pistol." Defendant went into the

storehouse and came out with his pistol in his hand.
When he came out the witness went to him and throwing
his right arm around him, took hold of his pistol with
his left hand. When witness took hold of the pistol de-
fendant held the pistol with both hands. Garrett Bowl-
ing also caught hold of defendant from behind. De-
fendant said "Boys, be careful, you are scuffling over
this pistol and she is liable to go off and hit somebody."
When the pistol went off, Jesse Barger, the deceased,
was very close to defendant. As well as witness could
remember defendant had hold of the handle of the pistol
with his right hand and his left hand was hold of the
cylinder. When the pistol went off witness had his left
hand on the barrel and his hand was powder burned.
When witness took hold of defendant, defendant re-
marked that he didn't want any trouble. Garrett Bowl-
ing testified that when the discussion arose over whether
or not Jesse Barger had moved the shoe, defendant told
him "every time he said he didn't put it there, he was
a God damned liar." Jesse said "Every time he said
he slipped the shoe up there, he was a God damned son
of a bitch." Defendant then turned and started to the
storehouse, at the same time saying he would not take
that. Defendant went into the storehouse and came
out with a pistol in both hands. Witness took back
holds on him and told him he must give up that pistol.
He did not remember of defendant saying anything. He
thinks the pistol was cocked, but never saw him cock it.
About that time John Deaton took hold of the pistol.
When John Deaton caught the pistol, defendant "had
her in his right hand, grabbed hold of the breech of her
and his thumb on the lock of her and her cocked." John
Deaton took hold of the barrel. While witness and John
Deaton were holding defendant, defendant wasn't trying
to do anything. When Jesse Barger approached he
raised the mule shoe over defendant's head and told him
"if he fooled with him, he would split his God damned
brains out." Henry Barger then struck John Deaton
knocking him back loose from the pistol. John recovered
and hit Henry in the face, knocking him nearly down.
Deaton then caught the pistol in his left hand and
jerked Brown around to the right. Henry then struck
Deaton again in the same way. Deaton struck Henry;
Henry recovered and came at him the third time. Deaton
then clutched the muzzle of the pistol in his left hand
"and the pistol went down out of my sight and him

hold of the muzzle of her with his left hand and before she come back in my sight (I was in behind Brown), she fired." At the time the pistol was fired Jesse Barger was reaching after it with both hands. Dr. Gross testified that the ball from the pistol entered the left side of deceased; deceased died from the effects of it the next day. After examining the wounds the doctor told deceased that he thought he was going to die. Deceased replied that all he hated to die for was his children. He gave deceased a hypodermic of morphine to relieve his suffering, and later on gave him another. On cross examination the doctor said that he told deceased that he didn't think he could live. The effect of the morphine was to brighten the mind of deceased. Deceased then made a statement as to how the difficulty occurred. The material part of the statement is that "he (Brown Begley) creened the pistol and he shot." Afterwards, the dying declaration was excluded and the jury told not to consider it.

The defendant testified to the fact that they were all engaged in pitching horseshoes. His side won and they started to set up to cider. Jesse said "they had beat us." Witness then went into the storehouse, thinking that they were all coming in. He got his coat and hat and pistol and walked out. John Deaton and Garrett Bowling both seized him and began to scuffle around with him. They had him bent over. At that time Henry Barger was cursing and saying that "he wasn't going to set up the cider." He never even saw Jesse Barger when the pistol went off. He never shot the pistol. He never attempted to raise the pistol or to shoot it. He had brought his pistol there and left it in the storehouse and went there to get it for the purpose of taking it home. Before he went into the storehouse, he and Jesse had some words. They gave each other the lie and something else. The pistol he had was a forty-five, and he carried it in a hip holster. When the pistol went off he felt no rebound from it; couldn't even say that the pistol was in his hand. Lizzie Deaton says that the defendant and deceased had a dispute about the game. Defendant then started toward the store. When he got about half way he said "All of you come on" and laughed. She never saw defendant go into the store. The next time she saw him both John Deaton and Garrett Bowling had hold of him. Henry Barger struck John Deaton, and about that time the pistol went off.

It is insisted for the defendant that notwithstanding the fact that the court subsequently withdrew from the consideration of the jury the dying declaration of Jesse Barger, yet in view of the fact that the statement had ben admitted it was impossible to remove the effect which it produced by merely telling the jury not to consider it. Why the court subsequently withdrew the dying declaration does not satisfactorily appear. The evidence of the attending physician to whom the declaration was made is to the effect that he advised the deceased that he could not get well. The deceased answered in effect that all he hated to die for was his children. At the time, the deceased was mortally wounded, and the declaration was made during the night preceding his death. He died the next morning. The statement was not made at a time when his mind was clouded or rendered unconscious by morphine. As a matter of fact, the declaration was made when deceased knew that he was going to die and had abandoned all hope of life, and with a sense of impending dissolution. Commonwealth v. Hargis, 124 Ky., 356; Kennedy v. Commonwealth, 100 S. W., 242, 30 K. L. R., 1063; Kelly v. Commonwealth, 119 S. W., 809. We, therefore, conclude that the statement in question was competent as a dying declaration.

The court instructed the jury on murder, voluntary manslaughter, accidental shooting, and reckless handling of fire arms. Defendant claims that the court erred in giving an instruction on the reckless handling of fire arms, and in failing to give an instruction on involuntary manslaughter. The evidence in the case leaves no doubt that defendant was called a vile epithet by the deceased. There is a conflict in the evidence as to whether defendant said he wouldn't stand for that, or whether Henry Barger remarked that they wouldn't stand for it and told him to go get his pistol. At any rate, defendant immediately went for his pistol, which was in the storehouse. He came out with his pistol, according to some of the witnesses, in both hands, and according to others, in his right hand. The pistol was not in his holster. The evidence leaves no doubt that the pistol was cocked for it was of the kind that would not go off unless cocked. Though claiming that he did not fire the pistol and that he did not intend to shoot the deceased, but that the shot was the result of an accident occasioned by the fact that he was being held by others, the fact nevertheless re-

mains that the pistol was discharged and the ball struck and killed Jesse Barger, a man who had just previously insulted him and whose remarks were the cause of his going after the pistol. There was evidence from which the jury could infer that defendant either shot the man that he intended to shoot, or that he carelessly and negligently turned the pistol in his direction and fired. We conclude, therefore, that the court did not err in instructing the jury on the reckless handling of the pistol. Without passing on the question of whether or not an instruction on involuntary manslaughter should have been given, we conclude that the failure to give such an instruction was not prejudicial error under the facts of this case. Those who seized defendant were evidently trying to prevent him from shooting the deceased. Notwithstanding their efforts in this direction he succeeded in his purpose. Accidental and unintentional killings do not happen in this way. The evidence would have justified a much heavier penalty.

Judgment affirmed.