## Allen v. Commonwealth.

(Decided February 8, 1916.)

### Appeal from Breathitt Circuit Court.

1. Criminal Law—Change of Venue—Discretion of Trial Court.—The granting of a change of venue is in the discretion of the trial court, and unless it affirmatively appears that this discretion has been abused, this court will not interfere with the ruling of the trial court.

2. Criminal Law—Change of Venue—When Should be Granted.— Where the family of the deceased was so large and influential, both in a personal as well as official capacity, as that a jury could

not be secured that would not be to some extent dominated by their influence, a change of venue should have been granted.

3. Criminal Law—Continuance—When Reversible Error Not to Grant.—Every person accused of crime is entitled to a fair opportunity to present his defense, and unless this opportunity is accorded him, it will be reversible error to refuse a continuance.

4. Criminal Law—Continuance—Postponement for a Few Days.—It is not indispensable when a motion for a continuance is made that the case should be continued until the next term of court or for any certain time. A postponement for a few days may answer every purpose, or if need be a special term may be called; and with the numerous circuit districts in the State there is no reason why the trial of any case should be unreasonably delayed.

5. Homicide — Evidence—Dying Declaration — Admissibility of. — It is not essential to the competency of a dying declaration that the injured party should in express words declare that he knows he is about to die or that he should make use of equivalent language. His recognition of impending dissolution may be shown in other ways. Only so much, however, of a dying declaration as details such facts and circumstances as it would be competent for the declarant to relate on the witness-stand if he had not been killed, is admissible. Mere expressions of opinion, as that "I was shot for nothing," are not competent.

HAZELRIGG & HAZELRIGG, RYLAND C. MUSIC, KELLY KASH and A. H. STAMPER for appellant.

M. M. LOGAN, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On August 7, 1915, Grover Blanton was shot and wounded by Elihu Allen, the appellant, and died from the effects of the wounds a few hours afterwards. On the same day Allen was placed in the jail of Breathitt county and remained there until his trial. On Monday, August 16, the grand jury of the county returned an indictment against him charging him with the murder of Blanton, and his trial was set for and commenced on Thursday, August 19th. On the trial he was convicted and his punishment fixed at imprisonment for life.

Several grounds are relied on for reversal, but we think it necessary to consider only the grounds relating to the refusal of the court to grant a change of venue or a continuance, and rulings respecting the admission of a dying declaration.

When the case was called for trial on Thursday morning, the day it was set down for trial, the appellant moved

the court to grant him a change of venue, and in support of this motion filed his own affidavit and three supporting affidavits. On the hearing of the motion, the Commonwealth filed the controverting affidavit of W. H. Blanton and introduced four witnesses, and thereupon the motion was overruled.

Section eleven of the Constitution provides in part: "The General Assembly may provide by a general law for a change of venue in such prosecutions for both the defendant and the Commonwealth, the change to be made to the most convenient county in which a fair trial can be obtained." And so much of section 1109 of the Kentucky Statutes, enacted to give effect to this constitutional direction as provides for a change of venue on the motion of the accused, reads:

"When a criminal or penal prosecution is pending in any circuit court, the judge thereof shall, upon the application of the defendant or the Commonwealth, order the trial to be had in some other adjacent county to which there is no valid objection, if it appears that the defendant or the Commonwealth cannot have a fair trial in the county where the prosecution is pending."

The affidavit of the appellant set out: "That on the 7th day of August, 1915, he was arrested by Gray Haddix, deputy sheriff of Breathitt county, and was incarcerated in the Breathitt county jail and has there been confined, and is there still confined, since the time of said arrest.

"That there exists in Breathitt county a state of general public sentiment, opinion and feeling against this petitioner, due to and by reason of this charge preferred against him, and by reason of and due to the social and political standing, the wide acquaintanceship, extended relationship and family connections of the deceased man, Grover Blanton, in Breathitt county. * * *

"Your petitioner states that the deceased man, Grover Blanton, was a son of Judge W. H. Blanton, of Jackson, Kentucky, and a deputy sheriff of Breathitt county, acting under and by virtue of the authority of the present sheriff, M. A. Spencer, of Breathitt County; that he was a young man of a very large acquaintance and personal following, and for several years prior to his death had been connected with some of the large corporations of Breathitt county as a peace officer and as a deputy sheriff upon the works of such corporations; that for many years he had been prominent in politics and in bus-

iness affairs of Breathitt county; that by blood and by marriage he was related to a large portion, and your affiant believes, a majority of the citizens of Breathitt county, and especially to a great number, if not a majority, of the men of Breathitt county qualified for jury service; that his father, Judge W. H. Blanton, is and for many years has been one of the most influential citizens, politicians and lawyers of Breathitt county, and wields a greater and more powerful influence with the people of Breathitt county, and especially with the jurors of Breathitt county, than any other man in Jackson or in Breathitt county; that as a politician and as an office-seeker in said county Judge Blanton has been invincible and has for many times held the offices of County Attorney and County Judge of said county, and that he could and would wield an undue and powerful influence with a jury of this county impaneled in this case; that the deceased man, Grover Blanton, has living in Breathitt county in all sections of said county five brothers and two brothers-in-law, to-wit: James Blanton, John Blanton, Tilden Blanton, Harrison Blanton, Benton Blanton, Sylvester Howard and Sam Cockrill, all of whom are in a position to and can and will exert and wield a powerful and undue influence prejudicial to this petitioner's interest in any trial of this defendant upon said charge that may be held in Breathitt county; that Blain Short, the captain of the local militia, is a close blood relative, and that as such officer he could and would wield a powerful and undue influence among the people of Breathitt county prejudicial to this defendant; that Sam Cockrill is a deputy sheriff of Breathitt county, and that as such an officer he is in a position such as would enable him to, and that he could, and this affiant believes that he would, exert his great and powerful, undue influence prejudicial to this affiant; that as citizens and men of Breathitt county, said brothers-in-law and brothers and hundreds of other blood relatives by marriage, living in all parts and sections of Breathitt county and in all and about every locality of said county from which jurors might be secured, or could be secured, they are in a position to, and that they could and would wield a great influence among the masses of people of Breathitt county, and especially the jurors, and those who might be able to qualify as jurors, and that they could prevent and this affiant believes that they would prevent him from securing a

fair and impartial trial based upon the law and evidence, if such trial was had in Breathitt county; that M. A. Spencer, Sheriff of Breathitt county, is a close personal friend and political friend of the family of the deceased man, and that the said deceased, and his brother-in-law, S. J. Cockrill, were both deputy sheriffs under said M. A. Spencer, and that said Spencer is deeply interested in, and would be naturally interested in, this prosecution, that he has deputy sheriffs under him in all parts of Breathitt county, and that he could, together with his many deputy sheriffs, and would wield a powerful influence prejudicial to the rights of this petitioner on the trial of this charge, if held in Breathitt county, and to such an extent that it would be impossible for your petitioner to have a fair and impartial trial in Breathitt county on said charge as is guaranteed to him by law.

"Your petitioner further represents and says that he is reliably informed and believes that there have been plans laid by the friends of the deceased man to take the life of this petitioner since his incarceration in the Breathitt county jail, and that he verily believes that he has been in great danger, and is still in great danger, from great bodily harm and death at the hands of the friends of the deceased man in Breathitt county; and that unless this honorable court takes some steps at once to guard and protect this petitioner that he will be killed and murdered here in Jackson at the hands of men worked up by passion and prejudice over the death of the deceased man without a true knowledge of the true facts of said killing, and he therefore begs the protection of this honorable court, and of the said Commonwealth until a change of venue can be, and is, granted, and your petitioner carried to a place of greater safety."

The supporting affidavits complied with the statutory requirements and no question is made as to the time or manner in which they were presented to the court.

M. S. Crain, a witness for the Commonwealth, who was examined in open court before the judge, and whose evidence appears, together with that of the other witnesses for the Commonwealth, in a bill of exceptions, on his examination in chief was asked and said: "Q. What acquaintance have you in Breathitt county among the people? A. Well, I used to know almost every man in it until these late developments, and the newcomers come since the railroad was built. Q. How long have you

lived in Breathitt county? A. Twenty-three years. Q. You have intercourse in the transacting of your business with a great many people of the county? A. Yes, sir; from all over the county. Q. You know the Blanton family? A. Yes, sir. Q. You knew Grover Blanton? A. Yes, sir; knew him well. Q. You know the defendant, Allen? A. Well, I think I have seen him, but I am not personally acquainted with him. Q. Mr. Crain, tell the court whether or not, in your opinion, there is such a feeling or sentiment among the people of Breathitt county as would prevent the defendant, Allen, from having a fair trial in Breathitt county by a jury selected from the people of this county, qualified jurors? A. Well, if he is properly represented by able counsel, I know of no reason why he can't get a fair and impartial trial. Q. Do you know of any feeling or sentiment among the people and those who are qualified for jury service, such feeling as would prevent him from getting a fair trial? A. No; other than the people generally speaking deplore the killing of the boy. He had lots of friends in Breathitt county. Q. How many people that would be qualified for jury service are there in this county? About how many; I don't expect you to say the exact number? A. Well, I judge about thirty-five hundred. Q. A large county and jury population also? A. Yes, sir. Q. Now, tell the court whether or not the Blanton family has such an influence among the people of the county, an undue influence among the people of the county, or would exert such an undue influence as would prevent the obtaining of a fair jury, and the obtaining of a fair trial for the defendant. A. Well, the Blanton family is a large family in this county, and they have considerable influence, but there are large sections of this county where none of their relatives to amount to anything don't live. Q. And what do you think as to whether or not their influence would prevent this man, Allen, from obtaining a fair jury and a fair trial? A. Well, as I formerly stated, I think if he is represented by able counsel that he could get a fair and impartial trial here. Q. Well, what do you think about his being able to get a jury that would be fair and impartial? A. I think it could be got easily. Q. And fairly easy? A. Yes, sir. Q. Do you know of any reason to prevent this man from obtaining a fair trial in the county? A. Well, none other than what I have already

given. The Blanton family is a large family, but it don't cover all the sections of the county.''

On his cross-examination he was asked and said: ''But isn't there a public sentiment against him in this county at this time in general? Isn't there in the town of Jackson? A. I don't think there is a general feeling against him. Q. How long have you known Judge Blanton, father of Grover Blanton? A. Well, I have known Judge Blanton, I think I can safely say for twenty years. Q. Has he held various offices in this county? A. Yes, sir. Q. He has been County Judge elected by the people? A. He was County Judge before I knew him. Q. Elected by the people, as you understand? A. That is what I have understood. Q. He has been elected County Attorney of this county? A. Yes, sir. Q. Elected by the people? A. Yes, sir. Q. Served how long? A. He served four years. Q. As County Attorney? A. Yes, sir. Q. That all the offices he ever held you know of? A. Well, Judge Blanton has always been one of the leading citizens; I don't know what other places he has held. Q. He is considered a strong, influential citizen of this county? A. Yes, sir. Q. Wields a great influence with the people and citizens of this county? A. He is considered one of our ablest and best citizens, Judge Blanton is. Q. Do you know whether Judge Blanton's son-in-law, Sam Cockrill, is a deputy sheriff? A. I think Sam is acting in that capacity. Q. He waits on the court and does— A. He seems to be actively engaged under the sheriff. Q. He is a strong and influential man in the county, is he not? A. Yes, sir; he is a reasonably strong man. Q. All over the county? A. Well, I suppose he is very well known all over the county. Q. He does business all over the county as sheriff? A. I don't know about that. I see him actively engaged around town doing business for the sheriff; other than that I can't say. Q. Do you believe with the influence of Judge Blanton and his sons and sons-in-law, and with the influence and friendship of Matt Spencer and his deputies that it would be probable to get a jury to try this case that would be unbiased in any way to give this man a fair trial? A. Well, I would suggest that there is over half of the citizens of this county that is not related to Judge Blanton, or any of the parties named in any way, who I think would try the case according to the law and the testimony adduced in the case.''

The evidence of the other three witnesses introduced for the Commonwealth was substantially the same as that of Crain, and the substance of this evidence is that, although Grover Blanton was a very popular young man and had a great many friends in the county, the accused, notwithstanding the influence of the widely extended, influential and highly-respected Blanton family and their connections, could have a fair trial if he was represented by able counsel.

Both the constitution and the statute enacted pursuant thereto, contemplate that cases might arise in which it would be necessary in the administration of justice to grant changes of venue. The underlying principle of these constitutional and statutory provisions is that both the Commonwealth and the accused are entitled to a fair and impartial trial by a jury free from any personal or political influences that might bias them in deciding the case, or that might prejudice their minds for or against one of the parties. The allowance of a change of venue is no more for the benefit of the accused than it is for the benefit of the Commonwealth. The Commonwealth is entitled, as much so as the accused, to have a fair and impartial trial before a jury whose minds are open only to such impressions as may be produced by the facts and circumstances developed on the trial; and when it appears that either party cannot have, in the county where the crime under investigation was committed, this character of trial, the prosecution should be removed to some other convenient county where a jury can be secured that will be entirely free from partiality or prejudice for or against either of the parties.

The statute puts on the party making the application the burden of proof; and we have written in a number of cases that the discretion lodged in the trial judge in respect to granting or not granting a change of venue will not be interfered with unless it affirmatively appears that the discretion was abused; or, in other words, that the ruling was prejudicial to the substantial rights of the complaining party. Mount v. Com., 120, Ky., 398; Com. v. Carnes, 125 Ky., 821; Fish v. Benton, 138 Ky., 644; Mansfield v. Com., 163 Ky., 488.

In considering this question the trial court had before it the evidence both for and against the motion, and was presumably familiar with the state of public sentiment in the county, and we have no reason to doubt

that in overruling the motion believed that the accused could secure in Breathitt county a fair trial. But, after reading and considering very carefully all that the record contains on this subject, we are constrained to the opinion that the trial court, under the very exceptional circumstances attending this application, committed error in overruling the motion.

The impulses, inclinations and feelings of human nature are about the same everywhere, and no matter how just and fair-minded strong men may be under ordinary conditions and in the customary affairs of life, they can not help being moved and controlled by their passions and prejudices when these attributes are so deeply touched and aroused as must have been the feelings of the Blanton family and their numerous friends and connections by the killing of Grover Blanton, and we can not shut our eyes to the belief that the demand surely pressed by the large and influential relationship of the deceased in both an official as well as personal capacity, that the slayer of Blanton must be punished, communicated itself to their numerous friends to such an extent as to make it practically impossible to secure a jury in the county that would not, at least in some measure, be responsive to this widely prevailing sentiment.

After the motion for a change of venue was overruled, the accused moved the court to grant a continuance, and in support of this motion filed an affidavit setting out, in part, that "The affiant further says that he was indicted on this charge on Monday, August the tenth; that he has been incarcerated in the Breathitt county jail since that time; that he has had no chance or opportunity to see and consult with his counsel, or with his witnesses, and that he has been unable to prepare his case for trial in the short time from Monday until Thursday morning, nor to get his witnesses and to know the full facts that can be proven by each of them, nor to discover all the important witnesses in his behalf; that he has at no time been allowed to leave the jail for consultation with his lawyers, or with his witnesses, and that he has felt that it was unsafe, and that he has been repeatedly advised that it was unsafe, for him to attempt to leave the jail and visit the offices of his attorney in Jackson unless accompanied by a heavy guard, and that because of said facts he has not had any reasonable chance or opportunity to get ready for trial; that within a few

minutes after the indictment was returned he was called
into court and his trial set for the morning of the third
day thereafter; that the scene of the killing is about nine
miles from the court house, and that his witnesses live
and reside in various sections of Breathitt county and
about said scene and from eight to sixteen miles from
Jackson, and that it has been impossible to get in touch
with all of them, or to in any wise prepare and conduct
an intelligent, just and reasonable defense in this case,
such as that to which he is entitled under the law.'' But
his motion was overruled, and this he urges as a ground
for reversal.

There is a just and widespread sentiment through-
out the State against unreasonable delay in the trial of
criminal cases, and this feeling has sometimes caused
trials, especially in cases attracting more than ordinary
interest, to be pressed with more dispatch than is becom-
ing in the orderly administration of justice or than is con-
sistent with the right to a fair trial in form as well as
substance that every accused person should have. And
it is sometimes unfortunately true that the haste with
which trials are conducted is accelerated by the constrain-
ing urgency of an excited popular demand. We appreci-
ate fully the importance as well as the necessity for a
prompt hearing and disposal of criminal cases, and in
no case have we hindered the early enforcement of the
law by ordering a new trial because a continuance was
not granted, unless it clearly appeared that the substan-
tial rights of the accused were prejudiced by the ruling.
But the speedy trial to which both the accused and the
Commonwealth are entitled does not mean that either
shall be so hurried as not to afford a full and fair op-
portunity to each to prepare the case.

It is not the purpose of the law to deprive any person
of his life or liberty without giving him reasonable op-
portunity to establish his innocence, and the dignity and
majesty of the law can be better vindicated by allowing
this opportunity than by forcing the accused into a trial
so soon after the commission of the offense with which
he is charged as that he cannot in reason be prepared to
answer with the care and preparation demanded by the
nature of the charge against him. What is a reasonable
opportunity to prepare for trial and what time should
be given must necessarily depend on the facts and cir-
cumstances of each case, and consequently this matter

must be left in a large measure to the discretion of the trial court, subject to review by this court.

It is not, of course, indispensable when a motion for a continuance is made that the case should be continued until the next term of the court, or for any certain time. All that is required is that the accused and his counsel shall have such time as the nature of the case and the circumstances surrounding it appears to be necessary to enable them to prepare for trial. A postponement for a few days may answer this purpose, or if need be, a special term may be called, and with the numerous circuit districts in the State there is no reason why the trial of any case should be unreasonably delayed.

But when a man stands charged with a capital offense, and may, in the discretion of the jury, be deprived of his life or his liberty forever, it is of the highest importance that he should have such time and opportunity to make his defense as the grave nature of the accusation and its consequences demand, and under the unusual conditions shown by the record we do not think that the appellant was given this time and opportunity. It is true he had employed counsel to defend him, and it does not appear that any witness whose evidence he desired was absent from the trial. But the mere presence of witnesses and the services of counsel are only a part of the preparation needed in important cases. The accused may in some cases have every witness that he needed in the courthouse and be represented by able counsel and yet not have the time for preparation that he should be allowed in order to properly present his defense.

In the case we have, three days after the indictment and ten days after the commission of the crime charged, the accused was put upon his trial, and it might be said that there were only two days intervening between the finding of the indictment on Monday and the beginning of the trial on the following Thursday morning. During all this time he was lodged in jail, and we think did not have the time for preparation that the law in reason gives. This court has in many cases emphasized its purpose not to permit technical errors to interfere with the execution of judgments rendered after a fair trial, and has time and again said that it would not reverse cases unless it appeared that the substantial rights of the accused were prejudiced by some ruling of the trial

court. But we have also condemned in equally emphatic terms the disposition sometimes brought to our attention of trial courts to hurry the accused into the trial of a capital case without giving him reasonable time for preparation; and in order that the trial courts in the State may have again brought to their attention the importance of allowing reasonable time for preparation we repeat here what was said in Penman v. Com., 141 Ky., 660:

"Every person accused of crime, however guilty he may be, or whatever the nature of the crime charged against him, is entitled to a fair opportunity to prepare and present his defense. It is not the purpose of the law to deny any person accused of crime of the high privilege of establishing his innocence. And whenever it has appeared to this court that the accused was deprived of a reasonable opportunity to explain away his guilt, or was forced into trial without reasonable opportunity for preparation, we have not failed to grant a new trial. Because, however desirable in the interest of justice a speedy trial may be, it is of much greater importance that the law of the land should be administered in an orderly and deliberate way, so that every person arraigned for crime may have in truth a fair trial."

And also the following from Samuels v. Com., 154 Ky., 758: "We recognize that it is important in the administration of the criminal law that a trial may be had as speedily after the transaction under investigation as a decent regard for the rights of the accused will permit, but it is more important that the trial should be fair than that it should be speedy. The peace and order of society demand that persons charged with crime should be brought to an early trial and, if guilty, convicted and punished, but while this is so, the right of the accused to reasonable time and opportunity to prepare and present his defense and establish his innocence, if he can, should not be lost sight of, or the trial conducted in such haste as to deny the accused the right to be heard in his own behalf."

As a further ground of reversal, it is urged that the trial court committed error in permitting the dying declaration of the deceased to be admitted as evidence, on the ground that it was not sufficiently shown that the declaration was made under a sense of impending death and at a time when the deceased did not have any

expectation or hope of recovery. Biggs v. Com., 150 Ky., 675.

The deceased was shot about eleven o'clock in the morning and died on the same day about six o'clock in the evening. The evidence clearly establishes that no person held out to him the slightest hope of recovery, and that he was fully convinced that his wounds were fatal. He did not say in words that he was going to die or that he could not recover, nor did any one tell him that his wounds were fatal or that he had only a short time to live; but he did say several times and to more than one person that "he was going to die," that "he was killed," that "they killed him"; and there being no facts or circumstances tending to controvert this certainty of impending death, his dying declaration was properly admitted.

As was said in Peoples v. Com., 87 Ky., 487: "The law does not require as a condition to the competency of the statement as a dying declaration, that the injured party shall, in express words, declare that he knows he is about to die, or that he shall make use of equivalent language. His recognition cf impending dissolution may be shown in this way, but the law does not limit it to this mode alone." To the same effect are Com. v. Matthews, 89 Ky., 287; Arnett v. Com., 114 Ky., 593; Com. v. Hargis, 124 Ky., 356; Alsop v. Com., 164 Ky., 171. Only so much, however, of a dying declaration as details such facts and circumstances as it would be competent for the declarant to relate on the witness stand if he had not been killed is admissible. In other words, what the declarant said or did or the accused said or did at the time is competent; but mere expressions of opinion by the declarant that do not involve a statement of any fact or circumstance connected with the transaction are not competent. And so it was inadmissible and prejudicial to allow witnesses to testify that the declarant said the accused "shot me for nothing," as this was not the relation of any fact or circumstance connected with the homicide, but merely an expression of his opinion.

In several cases this court has ruled evidence of this nature incompetent. Collins v. Com., 12 Bush, 271; Jones v. Com., 20 Ky. L. R., 355; Starr v. Com., 97 Ky., 193; Cleveland v. Com., 31 Ky. Law Rep., 115.

For the errors noticed, the judgment is reversed, with directions to proceed in conformity with this opinion.