## Jackson v. Commonwealth.

(Decided September 24, 1920.)

### Appeal from Oldham Circuit Court.

1. Homicide—Dying Declarations—Test of Admissibility.—The test 'of admissibility as a dying declaration is that the statement was made under a consciousness of impending death, and this may be determined not only by what decedent said, but also by his evident danger and by all the surrounding circumstances.

2. Homicide—Dying Declarations.—The length of time which elapsed between the declaration and the death of the declarant furnishes no rule for its admission or rejection as evidence.

3. Homicide—Dying Declarations.—Statement of declarant made three days before death held to be reaffirmance of statement made to same witness twenty-seven days before death.

4. Homicide—Dying Declarations.—Proof of attendant circumstances and statements of declarant held sufficient to prove he was conscious when statement was made, in the absence of contrary evidence, although he was physically weak and no one testified in so many words that he was conscious.

5. Homicide—Dying Declarations.—Not error to admit as dying declaration, statement made under sense of impending death, because of lack of proof that declarant did not entertain hope of recovery thereafter.

6. Homicide—Dying Declarations.—The statement not rendered incompetent because witness cannot state exact words of declarant.

R. J. and WILLIAM CROWE for appellant.

CHARLES I. DAWSON, Attorney General, and THOMAS B. Mc-GREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The appellant, charged with the murder of Ed. Dixon, was convicted of manslaughter and his punishment fixed at eight years' confinement in the penitentiary.

For reversal of that judgment he urges but one error, the admission of the dying declaration of Dixon.

Decedent was shot by appellant on December 18, 1919, in Oldham county, taken to the hospital in Louisville on December 19th and died from peritonitis as a result of his wounds, at the home of his mother in Louisville on January 22, 1920. Dr. R. B. Pryor was called to see deceased shortly after the shooting; visited him at the hospital on December 26 and again on January 19th.

The statement admitted as a dying declaration was made by deceased to Dr. Pryor, who testified with reference thereto as follows:

"Q. Doctor Pryor, on December the twenty-sixth, 1919, I believe you have stated that you saw Mr. Ed. Dixon at the hospital in Louisville? A. Yes, sir. Q. Just state what passed between you and Mr. Dixon, at that time, with reference to his condition? A. I told Mr. Dixon that I thought he was going to die in a short while. Q. Did Mr. Dixon make any statement to you, at that time, as to his belief concerning his physical condition. A. Yes, sir. Q. What did he say? A. He said he didn't think he was going to get well. Q. Just describe to the jury just what was his condition at that time? A. He had very little vitality in his body, he was suffering from peritonitis and was very weak, just as weak as a man could be to be living when I saw him that day. Q. What results from peritonitis could you notice? A. The abdomen was swelled up from here way down to here, puffed up as tight as it could be. Q. After this conversation between you and Mr. Dixon, state to the jury whether or not he described to you the manner in which the trouble occurred between him and Mr. Jackson the defendant in which he received these wounds? A. Yes, sir. Q. Just state what Mr. Dixon said with reference to the facts of this difficulty? A. He said that he was hitching up a mule or putting some harness on a mule at this place where he lived, and that the first thing that he knew of Mr. Jackson being on the place was when he came around the house and says what in the hell are you doing here and shot me through the arm right above the elbow, between the elbow and the shoulder on the right; he said he started towards him and he said he next shot him as he was going through the fence, this shot that went through here and he came on into the yard and I think clinched with Mr. Jackson. Q. Did he say what happened after they clinched? A. I don't remember about what he said, but I inferred that they had quite a—— By the court. Just tell what he said. A. I don't remember. Q. You mean you don't remember his exact words? A. No, sir. Q. Can you state the substance of what he said happened after they clinched? A. I don't remember of him saying very much about it after that, I know he spoke about having a fight. Q. I believe you stated you saw him again on January the nineteenth, 1920? A. Yes, sir. Q. Who was present besides you at that time? A. Mrs. Dixon and his mother were there. Q. Whose mother? A. Mr.

Dixon's mother, his wife and his mother were in the room. Q. On either of those occasions, December the twenty-sixth or January the nineteenth was Doctor H. H. Grant the surgeon present when these conversations took place on either occasion? A. No, sir. Mr. Smith was three in the room on the twenty-sixth of December, Isaac R. Smith. Q. Did you at any time hear Doctor H. H. Grant advise Mr. Dixon as to his condition? A. That was on the nineteenth of January, 1920. Q. Just what did Doctor Grant say to him, as to his condition? A. He said he would live just a very short time, perhaps ten or twelve hours, he didn't hardly think he would live through the day, when I was there with him. Q. Was it before Doctor Grant made that statement to him or afterwards that you talked to Mr. Dixon as to his condition? A. It was afterwards. Q. That you talked to him? A. Yes, sir. Q. When you talked to him? Yes, sir. Q. When you talked to him, what did you say to him as to his physical condition? A. I told him it was just a question of a short while that he had to live. Q. What did Mr. Dixon say then? A. He wanted to be taken home to his mother's home, his mother lived in Louisville, he said he wanted to die at his mother's house, he didn't want to die at the infirmary. Q. After Doctor Grant and you had had this conversation with him, did anything pass between you and him as to how the difficulty occurred between him and Mr. Jackson? A. He said he had nothing to add to what he had told me the first time, that was December the twenty-sixth.''

The test of admissibility as a dying declaration is that the statement was made under a consciousness of impending death, and this may be determined not only by what decedent said but also by his evident danger and by all the surrounding circumstances. Arnett v. Commonwealth, 114 Ky. 593; Commonwealth v. Griffith, 149 Ky. 405; Begley v. Commonwealth, 154 Ky. 30; Daniels v. Commonwealth, 154 Ky. 601; Eversole v. Commonwealth, 157 Ky. 478; Alsop v. Commonwealth, 164 Ky. 171; Cavanaugh v. Commonwealth, 172 Ky. 799; Postell v. Commonwealth, 174 Ky. 272.

By this test it does not seem to us that there can be any doubt of the competency of the statement of December 26th, entirely independent of what occurred on January 19th.

The mere fact that twenty-seven days intervened before death, would not, as urged by counsel for defendant, necessarily render it incompetent, since, as said in 1

Greenleaf on Evidence, sec. 158, and quoted with approval in Burton v. Commonwealth, 24 Ky. Law Rep. 1162: "The length of the time which elapsed between the declaration and the death of the declarant furnishes no rule for the admission or rejection of the evidence; though in the absence of better testimony it may serve as one of the exponents of the deceased's belief that his dissolution was or was not impending. It is the impression of almost immediate dissolution and not the rapid succession of death, in point of fact, that renders the testimony admissible."

We need not, however, rest our decision alone on what occurred on December 26th since we think it is clear that decedent reaffirmed the statement on January 19th, just three days before his death and when clearly he had no hope whatever of recovery.

He then had been informed by both his physicians he had but a few hours to live; had asked to be taken to his mother's home to die and told Dr. Pryor, to whom he had made the statement of December 26th, that he had nothing to add to that statement as to how the difficulty occurred between him and the defendant, clearly identifying the statement he was reaffirming.

As said in the note on page 702 of 27 L. R. A. (N. S.): "With a single possible exception, there seems to be no dissent from the general proposition that a statement inadmissible at its first utterance may become admissible as a dying declaration where reaffirmed under a sense of impending death, provided the previous statements are identified with such clearness as to amount to a practical reiteration."

Supporting this statement, in addition to many authorities from other jurisdictions cited, are the following Kentucky cases: Young v. Commonwealth, 6 Bush 312; Mockabee v. Commonwealth, 78 Ky. 380; Peoples v. Commonwealth, 87 Ky. 487; Smith v. Commonwealth, 113 Ky. 19, 67 S. W. 32; Million v. Commonwealth, 16 Ky. Law Rep. 17, 25 S. W. 1059; Wilson v. Commonwealth, 22 Ky. Law Rep. 1251, 60 S. W. 400. See also 56 L. R. A. note beginning at page 353.

Counsel for defendant contend that the later statement cannot be accepted as a reaffirmance of the first one because there is no proof that decedent was conscious at that time; that the evidence of his extreme physical debility is sufficient at least to create a doubt as to his being conscious and render it error to admit the statement. It is true no witness says in so many words that

decedent was conscious at the time of either statement, but his sensible and seemingly rational statements together with other detailed circumstances are sufficient proof that he was conscious to admit the statement in the absence of evidence to the contrary, of which there is none whatever.

It is next urged that it was error to admit the statement in the absence of proof that decedent was not without hope of recovery during the time that intervened until death. This, however, is not necessary under any authority we have seen, and counsel cite none, or under the reasons that sustain the admission of such evidence. Especially is the contention without merit here where there is no evidence whatever that deceased ever after the first statement had any hope of recovery.

It is also insisted that the statement is incompetent because not decedent's entire statement. This contention is based upon the fact that Doctor Pryor said he could not remember what decedent said occurred after he and appellant clinched, but an examination of the doctor's testimony as given above makes it apparent that he did give the substance of the whole declaration and that he only meant that he did not remember the exact words of the latter part thereof.

For the reasons indicated, judgment affirmed.