Rufus ASHER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 4, 1955.

Isaac Turner, Hyden, for appellant.

J. D. Buckman, Jr., Atty. Gen., for appellee.

CULLEN, Commissioner.

Rufus Asher appeals from a judgment sentencing him to life imprisonment upon conviction of the murder of James Maggard, who died in Fayette County after having been shot in Leslie County.

The appellant claims that the verdict was flagrantly against the evidence, and also claims error in the instructions and in the admission of evidence.

The shooting occurred in the home of Lige and Ella Asher, parents of Rufus Asher, in Leslie County. Around 15 persons were present in the home at the time. Some of these persons were engaged in drinking beer or whiskey, others were playing poker, and some were merely enjoying an evening of sociability. Among those present, besides the accused, Rufus Asher, and the victim, James Maggard, were C. B. Jones, Albert Napier, and Rufus Asher's brother, Boyd Asher. The latter three were jointly indicted with Rufus for the killing of Maggard, but separate trials were set for C. B. Jones and Albert Napier, and in the case now before us only Rufus and Boyd Asher were tried. A directed verdict was given in favor of Boyd Asher, so this appeal is concerned only with the conviction of Rufus Asher.

Neither C. B. Jones nor Albert Napier testified on the trial of Rufus Asher. A number of other persons who were present at the time of the shooting also did not testify, apparently having suffered from a lapse of memory as to what occurred.

Among those present, who *did* testify, were Bobby Napier, Jesse Bowling, Lige Asher, Ella Asher and Ansel Beam. Of these, Bobby Napier was the chief witness for the prosecution.

Bobby Napier testified as follows: James Maggard, C. B. Jones and Albert Napier arrived at the Asher home at the same time. After a while C. B. Jones and Albert Napier told Bobby that Maggard had crowded their car off the road, and they were going to get even with him. Bobby then suggested to Maggard that the two of them should leave, to avoid trouble. At that time Bobby and Maggard were in the kitchen, and the others were in the front room. C. B. Jones and Albert Napier then went to the front door, opened it, and stood outside the door challenging Maggard to come out. Maggard went towards them and Jones slapped Maggard with a pistol. Maggard grabbed Jones with one hand, and pulled out his own pistol with the other hand. Jones and Maggard began shooting each other. Albert Napier also shot at Maggard. Jones and Maggard fell to the floor, the latter falling to his knees grasping a bedpost. Rufus Asher then rushed up, took Albert Napier's pistol away from him, and shot Maggard twice in the back, with Albert Napier's pistol.

According to Bobby, Rufus Asher had not participated in any way in any difficulty between Jones, Albert Napier and Maggard prior to the moment he grabbed Albert's gun and shot Maggard.

Jesse Bowling testified that he had been asleep on a bed in the front room, and awoke just in time to see Rufus Asher standing over a man on the floor, and shooting him in the back.

Several persons testified as to alleged dying declarations made by Maggard, in the hospital, to the effect that "C. B. Jones, Albert Napier and Rufus Asher shot me".

Rufus Asher, testifying in his own behalf, denied any participation in the shooting. He said he was asleep in a back room and was awakened by the shooting. He came into the kitchen as the shooting ended, and Albert Napier, standing near the front door, slid his gun across the floor towards the kitchen. Rufus picked up the gun and Bobby Napier then jumped on him, hit him in the mouth, and took the gun away from him.

Rufus was corroborated by his father, mother and brother, and by Ansel Beam. They further testified that Bobby Napier was the one who started the fight, and that he had a gun and participated in the shooting.

■ From the foregoing résumé of the evidence, we think it is obvious that there was sufficient evidence to sustain the conviction of Rufus Asher. It is true there were minor discrepancies in the testimony of the Commonwealth's witnesses, and the credibility of Bobby Napier and Jesse Bowling was subject to some question, but the Commonwealth's evidence nevertheless carried sufficient weight to support a conviction. It is also true that no motive was shown for Rufus' acts, but proof of motive is not essential. *Pittman v. Commonwealth*, Ky., 242 S.W.2d 875; *Kratzwald v. Commonwealth*, 299 Ky. 10, 184 S.W.2d 120.

■ The court instructed on Rufus Asher's right to defend himself and to defend C. B. Jones and Albert Napier. It is now contended that Rufus also was entitled to a "defense of home" instruction. There are at least two reasons why he was not entitled to this instruction. First, he did not claim either self-defense or defense of home, but denied that he participated in the shooting. See *Carter v. Commonwealth*, 258 Ky. 807, 81 S.W.2d 883. Second, if he did participate in the shooting, it is clear that he shot Maggard when the latter was lying on the floor, wounded and in no position to cause any harm to the Asher home. Furthermore, the evidence shows that Maggard was trying to leave the home, rather than attack it, at the time the shooting started.

■ The court instructed on aiding and abetting. The appellant maintains this was error, on the theory that C. B. Jones and Albert Napier had ceased their activities at the time Rufus started shooting. This contention is untenable, because there is no basis in the evidence for concluding that more than a fleeting moment elapsed between the time C. B. Jones and Albert Napier stopped shooting and Rufus started shooting. The evidence warrants the conclusion that Rufus engaged in the battle on the side of C. B. Jones and Albert Napier, and that his intent was to assist them, although it does not appear what his motive was for assisting them.

The remaining contentions have to do with the admission of evidence.

■ James Maggard's mother testified concerning an alleged dying declaration by James, that C. B. Jones, Albert Napier and Rufus Asher had shot him. She said that in the same declaration he asked her to take care of his three children. At another point in her testimony she mentioned the three children. The appellant maintains that the only purpose of the Commonwealth in calling her as a witness was to get in the evidence about the children, and that this prejudiced the jury against him. We cannot sustain this contention, because the record shows that the appellant made no objection when the children were first mentioned, and the only objection made was to the dying declaration as such, on the ground that it was not in fact a dying declaration. Furthermore, the appellant, in subsequent cross-examination of other witnesses, him-

self brought out evidence concerning the existence of the children.

There was evidence as to alleged dying declarations made by Maggard in the hospital at Hyden, the night he was shot, and again in the hospital at Lexington, three days later and shortly before he did die. It is contended that the declarations made at the hospital in Hyden should not have been admitted because Maggard was not in fact at the point of death at that time, and the declarations made at the hospital in Lexington should not have been admitted because, according to the testimony of his doctor, there was every reason to expect that Maggard would recover, and his death occurred unexpectedly as the result of a sudden hemorrhage.

We think the declarations properly were admitted, because the evidence established that at the time the declarations were made Maggard *thought* he was dying and that death was imminent. This belief had some basis because three bullets had gone through his body, and he did in fact die from the wounds. The fact that several days elapsed between the first declarations and the death did not of itself make the declarations inadmissible. Burton v. Commonwealth, 70 S.W. 831, 24 Ky.Law Rep. 1162; Kelly v. Commonwealth, Ky., 119 S.W. 809; Jackson v. Commonwealth, 189 Ky. 68, 224 S.W. 649.

There is some contention that it was improper to admit evidence concerning the drinking and poker playing that went on before the shooting, but this evidence obviously was competent for the purpose of describing the circumstances and conditions that existed at the time of the shooting.

Jesse Bowling was permitted to testify that when he awoke, he saw Rufus shooting at a man on the floor, and he later learned that the man on the floor was James Maggard. It is contended that Bowling's statement that he later learned the man was Maggard was hearsay, and should not have been admitted. This contention is not well taken, because the record shows that no objection was made when Bowling first made the statement in question; the only objection was to a later repetition of the statement. In any event, the admission of this evidence could not be considered prejudicial, because all of the other evidence showed that if Rufus shot anyone, it was Maggard whom he shot.

Complaint is made that the appellant was not permitted, in cross-examining Jesse Bowling, to ask Bowling how many times he had been convicted of a felony. However, the record shows that Bowling was asked if he had been convicted of a felony more than once, and he answered "Yes," following which the court merely sustained an objection to this line of questioning. There was no prejudicial error in this, because the appellant was able to get to the jury the fact that Bowling had been convicted more than once.

Appellant's counsel asked several questions that would have called for a conclusion of the witness. His claim that the court erred in sustaining objections to these questions is clearly without merit.

Appellant makes some contention that his demurrer to the indictment should have been sustained, on the theory that C. B. Jones, Albert Napier and Rufus Asher did not act in concert, but independently of each other, and therefore they should not have been indicted jointly. This contention is without merit, because there was sufficient evidence that the three men did act in concert, and were aiding and abetting each other.

Upon the whole record, we find no error prejudicial to the substantial rights of the appellant.

The judgment is affirmed.